DECISION.
{¶ 1} Respondent-appellant Catherine Poliksa appeals the probate court's appointment of petitioner-appellee Pamela Margulies as her guardian. Poliksa assigns one error — that the court's decision was arbitrary and capricious and against the manifest weight of the evidence. In support of this assignment of error, Poliksa maintains that (1) Margulies did not demonstrate by clear and convincing evidence that Poliksa was incompetent; and (2) the court failed to consider the least restrictive alternative to guardianship — conservatorship.
 {¶ 2} Poliksa's multiple sclerosis, dementia, and organic mood disorder has rendered her incapable of taking care of her person or her property — she is unable to walk, feed, dress, or bathe herself, and she is not capable of making decisions concerning medical treatment and diet. Because the probate court's judgment was based on competent, credible evidence, we affirm.
 I. The Debilitating Effects of Multiple Sclerosis {¶ 3} In February 2005, Margulies applied to the probate court seeking to be appointed guardian for her first cousin, Poliksa, who suffers from debilitating multiple sclerosis. Poliksa resides in a nursing home and needs 24-hour care and supervision.
 {¶ 4} The court-appointed psychiatrist, Dr. Leo D'Souza, evaluated Poliksa and testified that, due to the multiple sclerosis, Poliksa needed help with all her basic needs. Poliksa was unable to walk, eat, dress, or bathe without the aid of another person. Dr. D'Souza further stated that Poliksa suffered from organic mood disorder and early signs of dementia. Her prognosis was "guarded to poor," and Dr. D'Souza believed that her condition would continue to deteriorate.
 {¶ 5} Dr. D'Souza also testified that Poliksa was not capable of making decisions concerning medical treatment, living arrangements, diet, or management of her daily-living activities, including finances. He recommended that the court grant a guardianship since there was no chance that Poliksa would ever be capable of again making decisions for herself.
 {¶ 6} Margulies testified that, prior to the death of her aunt (Poliksa's mother), she had promised that she would take care of Poliksa. And while Poliksa had a number of other relatives living in the area, no one besides Margulies was willing to be her guardian. Margulies became convinced that she needed to apply for a guardianship because of Poliksa's erratic behavior: (1) refusing to pay any of her bills or to execute a power of attorney; (2) accusing family members of being imposters; and (3) believing some deceased family members were alive, while maintaining that other family members (who were alive) were deceased.
 {¶ 7} Poliksa called two witnesses to refute the claim that she needed a guardian — two church volunteers who had assisted Poliksa with her basic needs. Both volunteers visited Poliksa approximately three to four times a week to help her with bathing, feeding, and cleaning. One of the volunteers, Judy Stalford, conceded that Poliksa "d[id] not make wise decisions about some things." The other volunteer, Thelma Koup, testified that she did not think that Poliksa was capable of making sound decisions.
 {¶ 8} The magistrate ruled that there was clear and convincing evidence that a "guardianship was necessary and quite urgent for Catherine Poliksa." The magistrate further held that a guardianship, not a conservatorship, was the least restrictive alternative, because Poliksa was not mentally competent to enter into a conservatorship.
 II. Guardianship {¶ 9} For a court to appoint a guardian there must be clear and convincing evidence of incompetency.[1] Clear and convincing evidence is the amount of evidence necessary to instill in the trier of fact a firm belief or conviction.[2] Incompetent means a "person who is so mentally impaired as a result of a mental or physical illness or disability * * * that the person is incapable of taking proper care of the person's self or property."[3]
 {¶ 10} In determining whether a trial court's decision to appoint a guardian is against the manifest weight of the evidence, a court of appeals must presume that the findings of the trier of fact were correct.[4] The rationale for giving deference to the findings of the trial court is that the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and to use these observations in weighing the credibility of the proffered testimony.[5] Therefore, a trial court's decision to grant a guardianship is not against the manifest weight of the evidence if the record contains competent, credible evidence from which the court could have found that the essential statutory elements of incompetency had been established by clear and convincing evidence.[6]
 {¶ 11} Poliksa maintains that Margulies failed to prove that she was incompetent. She believes that her questionable behavior could have been attributed to purely psychological reasons, and that since no evidence was introduced that Poliksa's health was in immediate danger, the court erred when it adjudicated her incompetent. We respectfully disagree.
 {¶ 12} At the hearing, the court-appointed psychiatrist, Dr. D'Souza, testified that, in his opinion, there was no chance that Poliksa would ever be capable of making decisions for herself. He based this opinion on the following information: (1) Poliksa suffered from debilitating multiple sclerosis, dementia, and organic mood disorder; (2) Poliksa's multiple sclerosis had rendered her incapable of taking care of her person or her property — she was unable to walk, feed, dress, or bathe herself, and she refused to pay for her 24-hour care at the nursing home despite having the resources to do so; and (3) she was not capable of making decisions concerning medical treatment and diet. These findings by the court-appointed psychiatrist were not contradicted.
 {¶ 13} Based upon these facts, we conclude that the probate court had before it competent, credible evidence that the appointment of a guardian was in the best interests of Poliksa. We recognize that "the mere presence of * * * dementia * * * is insufficient in itself to constitute incompetence."[7] But we hold that the magistrate was presented with sufficient evidence that Poliksa's multiple sclerosis, dementia, and organic mood disorder had rendered her unable to care for herself or her property, within the meaning of R.C. 2111.01(D). Therefore, the trial court did not err in appointing a guardian for Poliksa.
 {¶ 14} Poliksa further claims that the probate court should have found that a conservatorship was the least restrictive alternative to a guardianship. Poliksa is correct that under R.C.2111.02(C)(5) the probate court must consider evidence of a less restrictive alternative to guardianship. But a person who petitions under R.C. 2111.021 for a conservatorship must be acompetent adult who is physically infirm. In this case, the magistrate found that Poliksa was incompetent and unable to make basic life decisions. We are convinced that the court did not err in determining that Poliksa was incompetent and unable to petition for a conservatorship.
 {¶ 15} Adjudicating a person incompetent is a difficult task. To have one's life and livelihood diminished because of disease is a tragic fate. And to tell someone that she is no longer capable of caring for herself or her property is an unenviable responsibility for a court, especially when it is the result of a debilitating disease like multiple sclerosis. But we must uphold the probate court's decision when the evidence demonstrates that a person can no longer make basic life decisions.
 {¶ 16} Because there was competent, credible evidence to convince a reasonable trier of fact that the statutory elements of incompetency had been proved by clear and convincing evidence — that Poliksa was unable to care for herself or her property — the probate court did not err in granting a guardianship to Margulies. We hold that Poliksa's assignment of error is without merit and affirm the probate court's judgment.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] R.C. 2111.02(C)(3).
[2] See Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118.
[3] R.C. 2111.01(D).
[4] See Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273.
[5] Id.
[6] See In re Laigle Children, 5th Dist. No. 2005-CA-00264,2006-Ohio-829, citing C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578; In re Forest (1995),102 Ohio App.3d 338, 657 N.E.2d 307.
[7] See Steele v. Hamilton Cty. Community Mental Health Bd.,90 Ohio St.3d 176, 186, 2000-Ohio-47, 736 N.E.2d 10.