DECISION.
{¶ 1} Appellant Darcel Metz appeals the Hamilton County Juvenile Court's judgment granting permanent custody of her grandchildren Sara McCluskey and Brandon McCluskey to the Hamilton County Department of Job and Family Services (HCJFS). In her appeal, Metz seeks custody of Sara and Brandon, but because the trial court's judgment was based on competent credible evidence, we affirm.
 I. Sara and Brandon's Sustained Abuse {¶ 2} Sara McCluskey and Brandon McCluskey are brother and sister, and the children of Richard and Venus McCluskey. Both children have been abused by their father Richard — Sara sexually and Brandon physically. Because of the abuse, the Hamilton County Juvenile Court granted permanent custody of Brandon and Sara to HCJFS. The following facts detail the events leading up to that decision.
 {¶ 3} In March 2002, Sara reported that she had recently been abused sexually by her father, Richard. Sara was temporarily removed to the Indiana home of her paternal grandmother, appellant Darcel Metz. One condition of the temporary placement was that Sara was to have no contact with her father. Less than one month later, Sara reported contact with her father. Accordingly, the trial court granted HCJFS interim custody of Sara, and Sara was later placed in foster care.
 {¶ 4} Seven months later, in October 2002, the court adjudged Sara to be an abused child. In February 2003, Sara was placed in the temporary custody of HCJFS, and a treatment plan was adopted to reunify Sara with her parents. That plan included Sara's participation in individual therapy and in family therapy with her parents. In addition to the family therapy with Sara, Richard and Venus also attended various individual counseling programs.
 {¶ 5} In October 2003, the court terminated temporary custody and returned Sara to the custody of her parents under orders of protective supervision. Specifically, Richard was ordered to abstain from unsupervised contact with Sara.
 {¶ 6} Sadly, the abuse resumed three months later when Sara's mother called the Cincinnati Police, alleging that Richard had threatened her and had violently spanked and shaken Brandon. Upon arriving, the responding officer noticed that Richard was highly intoxicated. After briefly looking through the home, the officer found Sara next to a computer in Richard's closet. According to the interviewing officer, Sara indicated that her father had made her watch "nasty pictures" of adults on the computer, and that he had touched her while she was lying on his bed.
 {¶ 7} Following the incident, both children were temporarily placed in the custody of their mother. Based on the new allegations, HCJFS requested and received an emergency order for custody of Sara and Brandon. HCJFS then moved for interim custody, while also petitioning for permanent custody of the children.
 {¶ 8} In September 2004, about six months after the new allegations arose, the court adjudicated Sara and Brandon to be abused and dependent. A magistrate then held disposition hearings to determine who should be awarded custody. During the disposition phase, Metz petitioned for custody of Sara and Brandon. The magistrate heard testimony from seven wintesses, including Sara, regarding the physical and sexual abuse suffered by the children. Despite the parents' approval of Metz as legal custodian, HCJFS and the guardian ad litem raised significant concerns about Metz's involvement in the case. The magistrate decided that Metz's petition should be denied, and that permanent custody of Sara and Brandon should be awarded to HCJFS. Metz objected to the magistrate's decision, but the juvenile court adopted that decision and granted custody to HCJFS.
 {¶ 9} We note that the court and the magistrate below were very familiar with the McCluskey family. Once a family becomes involved in the court system on the dependency docket, the same magistrate always hears the case. Accordingly, the court's decision to grant custody to HCJFS took into account the problematic testimony of family members at both the 2002 trial and the 2004 disposition trial. The court also considered the testimony of several caseworkers and professionals who had been working with the family for years.
 {¶ 10} The magistrate's decision expressed concerns over the fact that Metz (1) had interfered with investigations; (2) had allowed Sara to be in contact with her father during a no-contact period; (3) had initially disbelieved Sara regarding the existence of the sexual abuse; and (4) had told caseworkers that Sara had a learning disability, had lied in the past, and could not always be trusted. Additionally, the magistrate noted that Sara had never expressed a desire to visit Metz. (At the time of the investigation, Brandon was too young to express his wishes.)
 {¶ 11} Metz's appeal assigns two errors: (1) the trial court's decision granting custody of Sara and Brandon to HCJFS was against the manifest weight of the evidence; and (2) the trial court abused its discretion when it adopted a magistrate's decision that failed to consider the relevant statutory factors[1] to determine the children's best interests.
 II. The Children's Best Interests {¶ 12} Metz argues that the trial court erred in finding that it was in the best interests of the children to grant permanent custody to HCJFS.
 {¶ 13} In cases of abuse, neglect, and dependency, the standard for granting permanent custody is upon clear and convincing evidence.[2] The court must find clear and convincing evidence that permanent custody is in the best interest of the child, and that the child cannot be placed with either parent within a reasonable time, or that the child should not be placed with the child's parents.[3]
 {¶ 14} Clear and convincing evidence, as required by statute, is more than a mere preponderance of the evidence; it is evidence sufficient to cause a trier of fact to develop a firm belief or conviction as to the facts sought to be established.[4]
Where clear and convincing proof is required at trial, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof.[5] A reviewing court will not reverse the judgment of a trial court as being against the weight of the evidence if the record contains some competent credible evidence from which the court could have found that the essential statutory elements had been established by clear and convincing evidence.[6]
 {¶ 15} The evidence overwhelmingly supported the trial court's conclusion that Sara and Brandon could not be placed with their parents. The issue here is whether the trial court correctly found that placement with HCJFS, rather than with Metz, was in the best interests of the children.
 {¶ 16} When determining what is in the best interest of the child, the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child, including whether the child has been in the temporary custody of public or private children services agencies for twelve or more months; and (4) the child's need for a legally secure permanent placement, and whether that type of placement can be achieved without a grant of permanent custody.[7]
The essence of Metz's assignments of error is that the trial court failed to consider the children's interaction and interrelationship with Metz.[8] Not so.
 {¶ 17} The trial court weighed the testimony of seven witnesses. Sara's therapist testified that Richard and Venus McCluskey "portrayed the relationship between Richard and [Metz] as very close." The therapist stated that his concern was that "if [the relationship] is as close as they portrayed it in counseling * * * there might be some issues surrounding danger to Sara."
 {¶ 18} The court below was troubled by Metz's refusal to believe that Richard had sexually abused Sara in both 2002 and 2004. The court's decision also contritely noted the incident when the children had been initially removed from Metz's custody because she had allowed her son to have unauthorized access to Sara and Brandon.
 {¶ 19} HCJFS supervisor Mike Battle investigated the 2004 domestic-violence incident as soon as he learned of the alleged physical and sexual abuse. At the time, Metz lived in the same apartment complex as the McCluskeys. Battle testified that, during his residential visit, Metz had interjected herself into the investigation by stating that Richard had been cleared of all charges — though he was later convicted of charges relating to his abuse of Brandon. Until 2004, Metz repeatedly characterized Sara as slow or learning disabled and as a liar who could not be trusted.
 {¶ 20} The officers who responded to the domestic-violence report in 2004 testified that Metz had been overly intrusive and had made Sara nervous during her interview with the officers.
 {¶ 21} It was not until the 2004 disposition trial that Metz finally acknowledged that "something unpleasant" had happened to Sara. After further questioning, Metz conceded that the unpleasantries of which Sara had complained, had been sexual in nature and had been perpetrated by her son, Richard.
 {¶ 22} In support of her petition for custody, Metz testified that, throughout Sara and Brandon's life, she had cared for the children when they were ill, had taken them to the doctor and to school, and had sheltered them when their parents were arguing. She further testified that she would never let the children be in contact with their father — despite her previous failure in that regard.
 {¶ 23} The guardian ad litem, on behalf of Sara and Brandon, suggested that custody be awarded to HCJFS. The guardian also reported that Sara had expressed a desire to live with her aunt and uncle in South Carolina, but that, notably, she had not verbalized any interest in living with, or being visited by, Metz.[9]
 {¶ 24} The trial court also noted that both children had been in the care of HCJFS for fifteen consecutive months, and that Sara had been in the custody of HCJFS twice within a period of twenty-two months.[10] Finally, the court determined that Sara and Brandon needed to be placed in a permanent and secure environment, and that placement in that type of environment could not be achieved without granting HCJFS permanent custody.[11]
 {¶ 25} We conclude that there was sufficient evidence to support the trial court's determination that Sara's and Brandon's interests were best served by granting permanent custody to HCJFS rather than Metz. After monitoring the McCluskey family for several years, the court below viewed the demeanor of the witnesses, judged the credibility of the witnesses, weighed the evidence presented to the court, and found Metz's eleventh-hour testimonial-turnabout unpersuasive. The record is also replete with competent, credible evidence from which the court could have concluded that the statutory factors set forth in RC 2151.414(D) had been met.
 {¶ 26} For all of the foregoing reasons, we overrule Metz's assignments of error and affirm the judgment of the trial court awarding custody of Sara and Brandon McCluskey to HCJFS.
Judgment affirmed.
Hildebrandt, P.J., and Doan J., concur.
[1] R.C. 2151.414(D).
[2] R.C. 2151.414(B).
[3] R.C. 2151.414(D) and (E).
[4] See Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118, paragraph three of the syllabus.
[5] See In re Knight (Mar. 22, 2000), 9th Dist. Nos. 98CA007258 and 98CA007266, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54.
[6] C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280, 376 N.E.2d 578. See, also, In re Poliksa,
1st Dist. No. C-050474, 2006-Ohio-2617.
[7] See R.C. 2151.414(D).
[8] See R.C. 2151.414 (D)(1).
[9] See R.C. 2151.414(D)(2).
[10] See R.C. 2151.414(D)(3).
[11] See R.C. 2151.414(D)(4).