DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from the judgment issued by the Wood County Court of Common Pleas, Probate Division, in a guardianship application. Because we conclude that the trial court abused its discretion in appointing Donald D. Simmons as guardian, we reverse.
 {¶ 2} In September 2001, Jack Simmons applied to the probate court to establish a guardianship for his mother, Jessie K. Simmons. Donald D. Simmons, a lawyer and another son of Jessie who was handling her financial and healthcare needs via durable powers of attorney, contested the necessity for a guardianship. Jane Caple, Jessie's daughter, favored Jack's appointment as guardian. A third son, Ronald Simmons, did not participate in any of the proceedings.
 {¶ 3} Jack asserted that Donald had misused his power of attorney and filed a motion to compel Donald to produce Jessie's financial records. In July 2002, the court conducted a hearing as to that motion, an in camera review of certain documents supplied by Donald, and heard testimony regarding the guardianship issues. Undisputed testimony was presented that Jessie suffers from dementia due to Alzheimer's disease and was currently residing in the enhanced care unit of Kingston Manor, a nursing home. The parties, in fact, stipulated that Jessie is incompetent and unable to manage her own financial affairs. Both Jack and Jane testified to Donald's alleged abuse of the power of attorney, the misuse of Jessie's funds, and his complete refusal to inform them of their mother's medical condition. Jane, who lives in Michigan more than four hours from the nursing home, stated that Donald had, in fact, scheduled a sale of their mother's house and personal property without consideration of the siblings' ability to attend or interest in obtaining any of her belongings. Jane noted that Donald also advised the siblings to stay away from the house and would not return phone calls or answer emails or letters inquiring about her mother's finances or medical condition. She said she recently was forced to file a foreclosure action to collect the remaining $8,000 balance of a $25,000 loan to Donald when he failed to pay according to the loan terms. As a result of the suit, Donald finally repaid the loan, but he then stopped responding to her email and telephone inquiries about their mother's health and finances.
 {¶ 4} Jane testified that she inquired about her mother's finances out of concern that her mother could continue to be cared for at the nursing home. She also was concerned that Donald had placed a "full code" notation on her mother's file at Kingston. This notation indicated that, if necessary, Jessie should be resuscitated by extraordinary means, which Jane believed to be contrary to her mother's wishes as expressed in her health care durable power of attorney.
 {¶ 5} Jack testified that when he questioned Donald's actions concerning his mother's finances, Donald also stopped communicating with him and would not disclose personal financial deals between himself and Jessie. Jack stated that he had disclosed to his siblings the details of his loan from their parents. He said he currently sent payments to his mother in care of Donald, as Jessie's attorney-in-fact.
 {¶ 6} Donald acknowledged that he had utilized his power of attorney to use one of Jessie's certificates of deposit as collateral for a personal loan, but denied any wrongdoing. He also acknowledged that he would not disclose either Jessie's financial or health information to his siblings, claiming that such information was confidential. Donald stated that he was acting as Jessie's attorney-in-fact and had often acted as his parents' attorney for legal matters. He claimed that these roles prevented him from disclosing any financial or medical information to his siblings. Evidence was presented that another outstanding loan between Jessie and Donald existed which had not been paid back according to its terms. Donald also claimed that the trust company in charge of some of Jessie's assets had handled the sale of her home. Letters between Donald and the trust company were presented which indicated that there were regular communications and notices regarding Jessie's trust and the trust company's actions.
 {¶ 7} The court ultimately found Jessie to be incompetent and that a guardianship was necessary due to the hostility between Donald and the other siblings. The court further found that insufficient evidence was presented to conclude that Donald had abused his authority under the Durable Family Power of Attorney and Durable Power of Attorney for Health Care. The court also found, however, that continuing with Donald independently in control via the powers of attorney with no requirement to advise his siblings of his actions was not a workable or practical less restrictive alternative. Nevertheless, the court denied Jack's application and appointed Donald as guardian, noting that this arrangement would allow him "to continue to make decisions as Jessie Simmons requested but also to put into place safeguards with appropriate oversight."
 {¶ 8} Appellant, Jack Simmons, now appeals from that judgment, setting forth the following three assignments of error:
 {¶ 9} "A. First Assignment of Error
 {¶ 10} "The Probate Court of Wood County improperly appointed an individual not designated by the ward to be her guardian without first determining whether the appointment of such individual would be in her best interest and/or whether such individual was a suitable person to be her guardian.
 {¶ 11} "B. Second Assignment of Error
 {¶ 12} "The Probate Court of Wood County improperly found an interested party could not review the prospective ward's financial records prior to a hearing to determine whether there was a less restrictive alternative to a guardianship.
 {¶ 13} "C. Third Assignment of Error
 {¶ 14} "The Probate Court failed to properly notify all interested parties it was considering as guardian an interested party who had never filed an application to become the guardian, nor indicated prior to a hearing any desire to be the guardian and, after the Court appointed such individual upon it[s] own motion, the Court failed to conduct a hearing as required by R.C. 2111.02(C)."
 I. {¶ 15} Appellant, in his first assignment of error, argues that the trial court erred in failing to determine whether appointing Donald Simmons as a guardian was suitable and was in the best interest of Jessie Simmons.
 {¶ 16} A trial court is vested with broad discretion in appointing guardians. The standard of review for such matters is to determine whether the trial court abused its discretion in reaching its judgment. Absent a clear abuse of that discretion, the lower court's decision should not be reversed. In re Estate of Bednarczuk (1992),80 Ohio App.3d 548, 551. An abuse of discretion implies more than an error of law or judgment. Rather, abuse of discretion suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 17} When a court considers a motion for appointment of a guardian, it must make a two-part determination: "(1) it must first determine that a guardian is required; and (2) it must also determine who shall be appointed guardian." In re Guardianship of Friend (Dec. 16, 1993), Cuyahoga App. No. 64018, citing In re Medsker (1990),66 Ohio App.3d 219. In the absence of a written nomination by the ward of who shall be appointed guardian, the probate court is required to choose a guardian who will promote the best interests of the ward. See In reGuardianship of Elliott (Dec. 16, 1991), Madison App. No. CA91-01-002; Inre Mahaffey (Jan. 20, 1987), Butler App. No. CA86-10-147.
 {¶ 18} In this case, the probate court found that a guardianship is in Jessie's best interest. This finding has not been challenged by the parties. We will now examine the court's specific designation of Donald Simmons as guardian.
 {¶ 19} In 1992, Jessie executed a living will and a power-of-attorney which authorized Donald to conduct her financial affairs and make medical care decisions. Both documents were drafted by Donald and executed in his office, but neither indicated any person designated to be guardian. After considering the testimony from the parties, the probate court determined that "the relationship between Donald D. Simmons and his two siblings, Jack Simmons and Jane Caple, has deteriorated to the point where it is not currently feasible for them to work together. There has been little substantive communication between the siblings and this has directly resulted in further deterioration of this relationship. Rather than go into each email or other correspondence presented as evidence, suffice it to say that each party has an explanation which lays the blame for his lack of communication on the other side." The court also found that "[i]t is obvious that Donald D. Simmons has a working familiarity and knowledge with the financial affairs of Jessie Simmons. As referred to above, the most substantive testimony received dealt with problems and concerns and suspicions arising due to the lack of communication and knowledge as to what was occurring. This lack of communication is not in Jessie Simmon's best interest." The court later found that " the current arrangement existing of Donald D. Simmons acting essentially independently via his Durable Power of Attorneys with no requirement to advise his siblings of his actions is not a workable or practical less restrictive alternative given what the Court believes Jessie was attempting to establish."
 {¶ 20} Despite its awareness that the hostility and lack of communication between the siblings was not in Jessie's best interest, the court then appointed Donald Simmons as guardian. Although the court attempted to follow Jessies's wishes, a careful reading of the entire record and testimony at the hearing reveals that Donald's appointment will not eliminate the siblings' communication and suspicion issues noted by the court. Due to the hostility shown by Donald when his siblings inquired about his financial arrangements with his mother and her medical condition, we cannot say that the record supported a finding that the appointment of Donald as guardian was in Jessie's best interest. In our view, when family members cannot cooperate the better approach is to consider and appoint a disinterested third party who will relay information and work together with all interested parties. Therefore, in light of the court's recognition of the obvious ill-will between the siblings and because of Donald's own acknowledged unresponsiveness to his brother's and sister's concerns, we conclude that the trial court abused its discretion in appointing Donald as guardian.
 {¶ 21} Accordingly, appellant's first assignment of error is well-taken.
 II. {¶ 22} In his second assignment of error, appellant argues that the trial court erred in denying his motion to discover information regarding his mother's financial records. We agree.
 {¶ 23} Generally, when reviewing a trial court's decision in a discovery matter, the standard of review is whether the trial court abused its discretion. Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, 592. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore, supra. Absent an abuse of discretion which prejudicially affects a substantial right of the moving party, an appellate court will not reverse a trial court's ruling on a discovery matter. Rossman v. Rossman (1975),47 Ohio App.2d 103, 110.
 {¶ 24} The trial court apparently determined that Jesse's financial records were privileged and confidential. This determination was improper for the following reasons.
 {¶ 25} A power of attorney ("POA") is a written instrument authorizing an agent to perform specific acts on behalf of the principal. See R.C. 1337.09; Testa v. Roberts (1988), 44 Ohio App.3d 161,164; Brooks v. Bell (Apr. 10, 1998), Hamilton App. No. C-970548. The holder of a power of attorney has a fiduciary relationship with the principal. See Brooks v. Bell, supra; In re Scott (1996),111 Ohio App.3d 273, 276. Such a relationship is "one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." Stone v. Davis (1981), 66 Ohio St.2d 74,78. In such a relationship, the person who holds the power of attorney bears the burden of proof on the issue of the fairness of transactions between himself and the principal. Testa v. Roberts, supra.
 {¶ 26} Where there is a confidential or fiduciary relationship between a donor and donee, a transfer of money or property from donor to donee is viewed with suspicion that the donor may have exercised undue influence on the donor. Studniewski v. Krzyzanowski (1989),65 Ohio App.3d 628, 632. Even if a POA gives an express grant of authority to an attorney-in-fact to make gifts to third persons, including the attorney-in-fact, it does not remove all obligations owed to the principal. Macewen v. Jordan, 2003 Ohio 1547, 1st App. No. C-020431, ¶ 13. See, also, In re Scott, supra. In such cases, a presumption of undue influence arises and the burden of going forward with evidence shifts to the donee to show that his conduct was free of undue influence or fraud and that the donor acted voluntarily and with a full understanding of his act and its consequences. See In re Estate of Svab
(1966), 8 Ohio App.2d 80, 90; Rheinscheld v. McKinley (Jan. 27, 1988), Hocking App. No. 453. The donee may rebut the presumption of undue influence by a preponderance of the evidence. See Krischbaum v. Dillon
(1991), 58 Ohio St.3d 58; In re Estate of Przvbylek v. Gwozdz (Mar. 17, 1989), Lucas App. No. L-88-107.
 {¶ 27} In this case, while Donald may have had some authority to make gifts to himself and his siblings, his own loan transactions utilizing Jessie's funds are subject to the presumption of undue influence. As attorney-in-fact, he occupied a position which afforded him a particular opportunity to take advantage of Jessie's confusion, since he stood on both sides of the transactions. Therefore, when the propriety of those transactions were questioned, the burden was on Donald to prove that they were fair and not detrimental to his mother's interests.
 {¶ 28} Donald claims, however, that the financial records requested were confidential and privileged since he acted as his mother's attorney and her attorney-in-fact. We initially note that we can find nothing in either statutory or case law which provides that an attorney-in-fact is prevented from disclosing information about his principal's financial affairs. The POA granted to Donald specifically states that he has the authority to do anything which Jesse herself could do, including the disclosure of financial information as necessary. Thus, as Jesse's attorney-in-fact, Donald was not prohibited from disclosing her financial information to his siblings.
 {¶ 29} Likewise, we do not conclude that Jesse's financial documents were protected by the attorney-client privilege. R.C. 2713.02
provides for a statutory attorney-client privilege which makes certain communications confidential, among those being statements "made to the attorney by a client in that relation or the attorney's advice to a client***."[1] The attorney-client privilege bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made between the attorney and client in the course of seeking or rendering legal advice. Frank W. Schaefer, Inc. v.C. Garfield Mitchell Agency, Inc. (1992), 82 Ohio App.3d 322, 329; see, also, R.C. 2317.02(A). Thus, the attorney-client privilege belongs to the client, and the only materials protected are those which involve communications with the attorney. Id.
 {¶ 30} Additionally, at common law, the attorney-client privilege may be waived either expressly or by conduct which implies waiver. SeeState v. McDermott (1995), 72 Ohio St.3d 570, 573. A partial, voluntary disclosure of privileged material constitutes a waiver of privilege for the remaining material which relates to the same subject matter.Mid-American Natl. Bank Trust Co. v. Cincinnati Ins. Co. (1991),74 Ohio App.3d 481, 489.
 {¶ 31} In the present case, although Donald may have performed various actions as Jessie's lawyer, any financial documents which were either presented to a bank or other third party would not have qualified as confidential communications. Moreover, even other communications between Donald and Jessie could be discovered if made outside the attorney-client context. Donald's roles involving his mother covered a wide variety of areas: attorney, attorney-in-fact, donee, executor, and heir. In our view, those roles often overlapped, and could not be fulfilled without an obvious conflict of interest. As Jessie's attorney, he created legal documents including her will and the healthcare and family powers of attorney which gave him specific benefits or powers. When acting as her attorney-in-fact, or signing financial documents on her behalf, especially those from which he received a direct benefit, he was no longer acting as her attorney. In those situations, any purported privilege did not apply.
 {¶ 32} Finally, Donald initially voluntarily disclosed both financial and medical information to his siblings. After the collection suit and Jack's discovery of the alleged default of Donald's loan with the bank, Donald then failed to respond to requests for information. Therefore, in our view, as Jessie's attorney-in-fact, Donald chose to waive whatever attorney-client privilege may have existed as to her finances and could not reassert any such privilege when called upon to defend the fairness of his actions utilizing the POA.
 {¶ 33} Thus, contrary to Donald's claim that all of Jessie's financial transactions were confidential and "privileged," any financial transactions from which Donald himself obtained a benefit are subject to scrutiny where the propriety of the transactions are questioned. Since the information was necessary to his claim, Jack was entitled to receive and review any financial documents related to the use or maintenance of Jessie's finances so as to determine whether Donald was abusing his authority under the POA. We acknowledge the court's attempt to ease the siblings' concerns by conducting its own in camera view of "various documents." Nevertheless, this was not an adequate remedy. Without full discovery of all of Jessie's financial records, Jack was prejudiced in his investigation of the entire circumstances surrounding the potential for abuse of the power of attorney. Therefore, we conclude that the trial court abused its discretion in denying appellant's request for full access to Jessie's financial records.
 {¶ 34} Accordingly, appellant's second assignment of error is well-taken.
 III. {¶ 35} Appellant, in his third assignment of error, claims that the probate court, in appointing a guardian on its own motion, failed to follow the requirements of R.C. 2111.02(C). Although this assignment of error is somewhat mooted by our disposition of the first two assignments of error, we deem it appropriate to address certain issues regarding notice and the court's sua sponte appointment of a guardian.
 {¶ 36} R.C. 2111.02, the statute governing guardianships, states in relevant part:
 {¶ 37} "(A) When found necessary, the probate court on its own motion or on application by an interested party shall appoint, subject to divisions (C) and (D) of this section and to section 2109.21 and division (B) of 2111.121 of the Revised Code, a guardian of the person, the estate, or both, of a minor or incompetent ***."
 {¶ 38} Thus, pursuant to R.C. 2111.02(A), a court may appoint a guardian on its own motion, as it deems necessary.
 {¶ 39} Nonetheless, certain procedures must be followed to comply with the remaining statutory requirements. R.C. 2111.02(C)(1) provides that "prior to the appointment of a guardian or limited guardian under division (A) or (B)(1) of this section, the court shall conduct a hearing on the matter of the appointment." The hearing shall be conducted as follows:
 {¶ 40} "(1) The proposed guardian or limited guardian shall appear at the hearing and, if appointed, shall swear under oath that the proposed guardian or limited guardian has made and will continue to make diligent efforts to file a true inventory in accordance with section2111.14 of the Revised Code and find and report all assets belonging to the estate of the ward and that the proposed guardian or limited guardian faithfully and completely will fulfill the other duties of guardian, including the filing of timely and accurate reports and accountings***".
 {¶ 41} R.C. 2111.04 governs the notice required when seeking the appointment of a guardian for an alleged incompetent person and provides:
 {¶ 42} "(A) *** No guardian of the person, the estate, or both shall be appointed until at least seven days after the probate court has caused written notice, setting forth the time and place of the hearing, to be served as follows:
 {¶ 43} "* * *
 {¶ 44} "(2) In the appointment of the guardian of an incompetent, notice shall be served:
 {¶ 45} "(a)(i) Upon the person for whom appointment is sought by personal service by a probate court investigator, ***
 {¶ 46} "* * *
 {¶ 47} "(b) Upon the next of kin of the person for whom appointment is sought who are known to reside in this state. ***"
 {¶ 48} Compliance with the notice provisions as set forth above assures that those affected by the proposed guardianship are given the opportunity to be heard and afforded their right to due process. See In reGuardianship of Reynolds (1956), 103 Ohio App. 102, 106-107; Horn v.Childers (1959), 116 Ohio App. 175, 181; In re Koenigshoff (1954),99 Ohio App. 39. In addition, R.C. 2111.03 requires that any person applying for appointment as a guardian, "shall file with the probate court an application that contains a statement of the whole estate of the ward, its probable value, and the probable annual rents of the ward's real property." In our view, absent exigent circumstances, in order to comply with statutory requirements, the court must provide notice to the ward and any interested parties even when sua sponte appointing a guardian. Such notice then preserves all parties' rights to request a hearing to present evidence regarding the suitability of the proposed guardian.
 {¶ 49} In this case, the court granted the "application for guardianship" to Donald who had not even applied for such appointment and ordered him to "submit the required inventory as required by statute and the required bond." No notice was given that Donald, who, in fact, opposed the guardianship, was even a potential candidate for guardian. While the court had the authority to appoint a guardian on its own, in order to comply with the statutory notice requirements, it should have first given notice of the proposed guardian, required Donald to file his application with the required statutory inventory, and then scheduled a hearing. Since the other interested parties had no notice of the potential appointment of Donald and were simultaneously denied the opportunity to examine Jessie's current financial assets, they were deprived of the right to prepare and present specific evidence in opposition to Donald's appointment at the hearing.
 {¶ 50} In addition, nothing in the record indicates that Donald ever appeared and was sworn pursuant to R.C. 2111.02(C)(1) under oath to make "diligent efforts to file a true inventory *** and find and report all assets belonging to the estate of the ward and *** [to] faithfully and completely will fulfill the other duties of guardian, including the filing of timely and accurate reports and accountings. Moreover, had Donald initially applied for the appointment, he would have been required to disclose all of Jessie's current financial information, thus negating the confidentiality claim. Therefore, we conclude that the court erred in failing to provide proper notice of the proposed guardian.
 {¶ 51} Accordingly, appellant's third assignment of error is well-taken.
 {¶ 52} The judgment of the Wood County Court of Common Pleas, Probate Division, is reversed and remanded for proceedings consistent with this decision. Appellee is assessed the court cost of this appeal.
 JUDGMENT REVERSED.
[1] R.C. 2713.02 does not provide, however, that communications or actions performed under a power of attorney are confidential or privileged.