OPINION
{¶ 1} Appellant, Bonnie Jones, appeals the decision of the Clermont County Court of Common Pleas, Probate Division, denying her request to be named guardian for her mother, Marie E. Thompson ("mother"), and naming her sister, appellee, Donna Wooton ("Wooton"), as the mother's guardian.
 {¶ 2} Appellant and Wooton both filed competing applications in 2005 to be named their mother's guardian. The two applications were filed after a family dispute arose over the mother's care and physical placement. The trial court named Wooton temporary guardian and subsequently held a hearing on the applications. After the hearing, the trial court named Wooton as the guardian of the person and estate of the mother. Appellant appeals that decision, presenting two assignments of error for review.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "THE TRIAL COURT'S DECISION TO APPOINT APPELLEE, DONNA WOOTON, AS GUARDIAN OF THE PERSON AND ESTATE OF MARIE THOMPSON, WARD, IS REVERSIBLE ERROR, IS AN ABUSE OF DISCRETION AND/OR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In this assignment of error, appellant asserts that her mother expressed through words and deeds her wishes to have appellant care for her, and appointed appellant as her attorney-in-fact. Appellant argues that she has not abused this position of trust and, therefore, the mother's best interests would be served by designating appellant as her guardian.
 {¶ 6} When a court considers a motion for appointment of a guardian, it must make a two-part determination: (1 ) to first determine that a guardian is required for the potential ward or person for whom the guardian would act; and (2) to also decide who shall be appointed guardian. In re Medsker (1990), 66 Ohio App.3d 219; In re Guardianshipof Simmons, Wood App. No. WD-02-039, 2003-Ohio-5416, ¶ 17; In the Matterof Constable (Mar. 30, 1998), Clermont App. No. CA97-11-101; R.C.2111.01 et seq.[1]
 {¶ 7} In the absence of a written nomination by the ward of who shall be appointed guardian, the trial court is required to choose a guardian who will promote the best interests of the ward. Constable; Simmons
at ¶ 17.
 {¶ 8} A trial court is vested with broad discretion to appoint a guardian of a person deemed incompetent. The standard of review for such matters is to determine whether the trial court abused its discretion in reaching its judgment. In re Guardianship of Schneider,156 Ohio App.3d 469, 472, 2004-Ohio-1378, ¶ 16; In re Guardianship of Brehm (Nov. 29, 1999), Butler App. No. CA99-04-070.
 {¶ 9} The term discretion itself involves the idea of choice, an exercise of will, a determination made between competing considerations.In re Guardianship of Koenig, Cuyahoga App. No. 81462, 2003-Ohio-1727, ¶ 26. In order to have an abuse of discretion in reaching such determination, "the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Huffman v.Hair Surgeons, Inc. (1985), 19 Ohio St.3d 83, 87; Koenig; Valentine v.Valentine, Butler App. No. CA2004-01-024, 2005-Ohio-2366, ¶ 17.
 {¶ 10} The record indicates that appellant and Wooton are two of the mother's seven grown children. The record also indicates that the mother executed a will in 1994, in which she expressed her desire that appellant care for the mother's disabled son. Under the provisions of the will, appellant is named executrix and will receive all of the mother's assets. In 2003, the mother executed a durable power of attorney that named only appellant as the attorney-in-fact.[2] The mother also conveyed her home to appellant in 2004.
 {¶ 11} Testimony was presented that the mother's family met in 2005 to discuss what provisions could be made for the mother's deteriorating cognitive abilities. Appellant reportedly offered to and did sell both her home and the house she received from her mother to facilitate the construction of a new home to accommodate the mother, the mother's disabled son, as well as appellant's family.
 {¶ 12} The mother lived with appellant in this newly-constructed home for approximately one month, when Wooton took the mother for an overnight visit in early December 2005. Without expounding on the details as provided by the various witnesses, the visit with Wooton culminated in a rift within the family and the filing of two guardianship applications. The mother remained with Wooton and never returned to appellant's home.
 {¶ 13} As appellant acknowledged in her argument, appellant held a position of trust as the mother's attorney-in-fact. Such a relationship is "one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."Stone v. Davis (1981), 66 Ohio St.2d 74, 78. In such a relationship, the person who holds the power of attorney bears the burden of proof on the issue of the fairness of transactions between himself and the principal.In re Guardianship of Simmons, 2003-Ohio-5416, ¶ 25.
 {¶ 14} Wooton argued both to this court and the trial court below that appellant may have asserted unfair influence over her mother or used some of her mother's funds inappropriately. The trial court made no specific finding on that issue, and we will not speculate in that regard. The trial court reportedly based its decision instead on what it believed to be the current wishes of the mother regarding where she wanted to live.
 {¶ 15} The trial court's choice between two competing applications for guardianship in a divisive family situation was not an easy one to make. Neither side emerged unscathed in this battle. The trial court acknowledged that the accommodations at appellant's new home were superior to Wooton's house, but found that the mother could be safely placed with either applicant.
 {¶ 16} Although the trial court heard various witnesses testify about the mother's emotional state and confusion in referring to her daughters by name, the trial court found that the mother had sufficiently indicated the desire to remain with Wooton and to not return to appellant's home.
 {¶ 17} After reviewing the record, we cannot say that the trial court reached a result so palpably and grossly violative of fact and logic that it evidences an exercise of passion or bias or perversity of will.
 {¶ 18} Accordingly, appellant's first assignment of error is overruled.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "THE TRIAL COURT ERRED IN FINDING THAT THE NAMING OF APPELLANT, BONNIE JONES, AS ATTORNEY-IN-FACT IN THE WARD'S POWER OF ATTORNEY DOES NOT CREATE A REBUTTABLE PRESUMPTION FOR THE APPOINTMENT OF A GUARDIAN FOR THE WARD."
 {¶ 21} Appellant argues that the mother's decision in 2003 to name her as the mother's attorney-in-fact should create a rebuttable presumption that appellant should be appointed guardian.
 {¶ 22} The document labeled, "Power of Attorney" and provided as evidence in the instant case indicates that the mother's appointment of her power of attorney shall not be affected by her disability. The same document does not nominate anyone for consideration for appointment as guardian. See, e.g., In re Guardianship of McHaney (Nov. 10, 2004), Summit App. No. 22088, 2004-Ohio-5956.
 {¶ 23} Both R.C. 2111.121 and R.C. 1337.09 provide that a person may nominate in writing for consideration of the probate court a person to be the guardian of the nominator's person, estate, or both. We are well aware that the mother designated appellant as her attorney-in-fact in her durable power of attorney. The mother did not, as provided in the statutes, nominate appellant as her potential guardian.
 {¶ 24} Therefore, we decline to find a rebuttable presumption exists for the appointment of appellant as the mother's guardian. Appellant's second assignment of error is overruled.
 {¶ 25} Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] It appears uncontested that the mother required a guardian.
[2] Evidence was also admitted that the mother named appellant as her attorney-in-fact in the mother's "Durable Power of Attorney for Health Care," which was executed in 2003.