DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, John A. Billis, appeals from a judgment of the Lucas County Common Pleas Court, Probate Division, appointing independent third party Kevin P. McManus to serve as guardian of the person and estate of Catherine M. Scobie, an incompetent. For the reasons that follow, we affirm the judgment of the trial court. *Page 2 
 {¶ 2} Scobie, the ward in this case, is a widow, in her 80's, who has been treated for senile dementia since 2002. Appellant Billis is Scobie's son. Appellee, Patricia Sahadi, is Scobie's daughter.
 {¶ 3} On November 13, 2006, Billis filed an application to be appointed guardian for Scobie. Weeks later, on November 29, 2006, Sahadi filed her own application for guardianship of Scobie. The filing of these applications followed disputes between the two siblings over the physical care and custody of their mother, and over concerns regarding the manipulation of her finances.
 {¶ 4} A guardianship hearing took place over a period of two days, beginning on February 13, 2007, and ending on February 20, 2007. At the hearing, evidence of the following was adduced. On January 21, 1998, prior to any suggestion of dementia or other mental illness or affliction, Scobie executed a durable power of attorney nominating Billis as her guardian.
 {¶ 5} The year 2002 marked the noticeable onset of Scobie's senile dementia. At this point she began taking medication used for treatment of people with Alzheimer's disease. In December 2005, Scobie's health started to rapidly deteriorate. In January 2006, her yearly winter trip to Florida was cut short as she was taken by life squad from her Florida residence to an emergency room in Okeechobee, Florida.
 {¶ 6} Billis, upon learning of his mother's circumstances, flew to Florida to be with her. Scobie spent approximately five days in the hospital, after which she and Billis returned to Ohio. Immediately upon her return, Scobie was admitted to Flower Hospital *Page 3 
for further care. Following her discharge, Scobie moved back to her Sylvania residence, and Billis moved in with her because she was no longer able to live there on her own. In April 2006, Scobie moved into her son's home, where she stayed until September 21, 2006.
 {¶ 7} On September 21, 2006, Sahadi and her husband picked Scobie up at the Billis residence for a routine visit together. That day, they went to attorney Douglas King's office, where Scobie executed both a revocation of the earlier power of attorney nominating Billis as her guardian and a new power of attorney nominating Sahadi as her guardian. Because Sahadi was concerned that Scobie was unhappy under Billis's care, Sahadi did not return her to Billis's home after the visit. Instead, she brought her to live in her own home.
 {¶ 8} On September 22, 2006, the day after Scobie was removed from Billis's home, Sahadi accompanied Scobie to an appointment with their family physician, Dr. Jonathan Rohrs. During that visit, Dr. Rohrs completed an expert evaluation form stating that although Scobie exhibited "generally good judgment," she was incompetent to care for herself and in need of a guardian. In that same report, Rohrs indicated that there was evidence of abuse, neglect or exploitation, and that such evidence was in the form of a statement by Scobie that she had experienced "screaming, yelling, and grabbing" by her former caregiver.
 {¶ 9} The testimony suggested a great deal of ill-will, bitterness, and hostility between the applicants. As a result of these bad feelings, the applicants were unable to *Page 4 
cooperate — even for the simple purpose of getting Scobie's clothing delivered to her from Billis's home. At one point, Billis went to Sahadi's home in an apparent attempt to deliver the clothing. Instead of making the transfer, Sahadi ordered Billis off the property and immediately called the police. There is nothing in the evidence to indicate that Scobie ever received those articles.
 {¶ 10} There was also evidence of various financial irregularities, effectuated by both Billis and Sahadi, respectively. For example, in May 2006, Billis removed approximately $50,000 from his mother's trust account, only to put it into a separate account bearing both his name and Scobie's. When asked on cross examination why he made this transfer, Billis stated that probably it was done to take advantage of a better interest rate. Later, during questioning by the court, Billis stated that the money had been removed for the purpose of buying a house in Florida. No such house was ever purchased, and the money was never returned to the trust. In fact, on September 21, 2006, the money was transferred into an account that was in Billis's name, alone. Billis explained that he made that transfer in order to protect his mother's funds against misappropriation by his sister.
 {¶ 11} Another example of potential financial irregularity involving Billis was revealed at trial following testimony by Billis that he had performed various services for his mother free of charge, including caring for her lawn. On cross examination, Billis was presented with a number of checks that indicated, contrary to his testimony, that, at *Page 5 
least on some occasions, he had paid for those services, and had done so using his mother's bank account.
 {¶ 12} Additional testimony revealed that although Scobie's car was part of the trust assets, Billis simply gave the car to his brother, Robert, and that Scobie's money was used to pay for gas and insurance on the car.
 {¶ 13} For Sahadi's part, the evidence demonstrated that since September 2006, she had been utilizing funds from her mother's bank account, despite a court order stating that those funds were to be returned to Scobie's trust. Sahadi testified that she deliberately failed to return the money to the trust, because her mother had asked her not to.
 {¶ 14} Regarding Scobie's need for a guardian, it was agreed by all parties at the hearing that Scobie's disease was severe and that she was incompetent and in need of a guardian.
 {¶ 15} In a judgment entry dated March 29, 2007, the probate court found that Scobie was, in fact, in need of a guardian, but that due to ongoing hostility between the applicants and their inability to act in Scobie's best interest, neither applicant was suitable to serve in that capacity. The court went on to direct attorney Kevin McManus, as a disinterested third party, to file an application to become Scobie's guardian. McManus's application was granted on May 3, 2007. On May 15, 2007, Billis filed a notice of appeal, and requested that the case be assigned to the accelerated calendar. Billis's *Page 6 
request was granted on May 24, 2007. Billis raises the following as his sole assignment of error:
 {¶ 16} "THE PROBATE COURT ABUSED ITS DISCRETION IN APPOINTING A GUARDIAN BY SUBSTITUTING ITS PREFERENCE FOR A DISINTERESTED NEUTRAL RATHER THAN COMPLYING WITH THE STATUTORY MANDATE OF R.C. § 2111.121(B), WHICH DIRECTS THAT THE PROBATE COURT APPOINT AS A GUARDIAN A PERSON WHO HAS BEEN NOMINATED BY THE WARD I N A POWER OF ATTORNEY, SO LONG AS THAT PERSON IS SUITABLE, COMPETENT, AND WILLING TO SERVE."
 {¶ 17} The probate court is vested with broad discretion in appointing a guardian. In re Guardianship of Simmons, 6th Dist. No. WD-02-039,2003-Ohio-5416, ¶ 16. An appellate court reviewing such determinations applies an abuse of discretion standard, and absent a clear abuse of discretion, the lower court's decision should not be reversed. Id. "Abuse of discretion" implies more than an error of law or judgment; rather it suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} A trial court considering a motion for appointment of a guardian must make a two-part determination: First, it must determine that a guardian is required; and second, it must determine who shall be appointed guardian. In re Guardianship of Friend (Dec. 16, 1993), 8th Dist. No. 64018. In Ohio, the legislature has established two mechanisms by which a person can nominate his or her own guardian: (1) Through a *Page 7 
durable power of attorney, pursuant to R.C. 1337.09; or (2) through a separate writing, pursuant to R.C. 2111.121(A).
 {¶ 19} R.C. 2111.121(B) relevantly provides that if an individual is nominated (by either of the established methods) to be the guardian of the nominator's person, estate, or both, and proceedings for the appointment of a guardian for the persona are commenced at a later time, "the court involved shall appoint the person nominated as guardian in the writing or durable power of attorney most recently executed if theperson nominated is competent, suitable, and willing to accept theappointment" (Emphasis added.)
 {¶ 20} In the case at bar, Billis and Sahadi were nominated in separate powers of attorney to be the guardian of Scobie. Billis argues that the later-executed power of attorney, which named Sahadi as guardian, is invalid because Scobie was incompetent at the time she executed it. Thus, Billis's reasoning continues, the power of attorney naming him guardian would be the most recent and the one whose nomination must be honored under the law.
 {¶ 21} Here, the trial court was presented with the choice of two potential nominations, naming two different nominees. Although the court did not expressly determine which of the two nominations should take primacy in this case, it did determine, upon consideration of the totality of the evidence before it, that neither of the prospective guardians was suitable to serve as Scobie's guardian.
 {¶ 22} The trial court's finding of unsuitability — in this case, on the part of both nominees — raises the question of whether R.C.2111.121(B) permits the trial court any *Page 8 
discretion in deciding whether to appoint a nominated individual. Stated otherwise, we must now determine whether a trial court is required to blindly give meaning to any valid power of attorney which identifies a prospective guardian. We believe that the answer to this question is no. Although the legislature was clear in providing a means for the nomination of a prospective guardian, appointment of the person nominated is required only where the court has determined that the person nominated is "competent, suitable, and willing to accept the appointment." See R.C. 2111.121.
 {¶ 23} As indicated above, the trial court determined that, as a result of the hostility between the applicants and their inability to act in Scobie's best interest, neither applicant was suitable to serve as Scobie's guardian. "In making a determination as to who should serve as a guardian, the probate court's primary responsibility is to ensure that the person appointed will act in the best interests of the ward."In re Guardianship of Thomas (2002), 148 Ohio App.3d 11, ¶ 96. The record in this case contains evidence by which the probate court could well have concluded that previous actions taken by Billis and Sahadi — including those actions resulting from their ongoing hostility and refusal to cooperate, and those actions involving Scobie's finances — were contrary to the best interests of Scobie, and that Billis and Sahadi were therefore unsuitable to serve as her guardian.
 {¶ 24} For all of the foregoing reasons, appellant's assignment of error is found not well-taken and the judgment of the Lucas County Court of Common Pleas, Probate Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to *Page 9 
App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1