[Cite as *In re Guardianship of Hilt*, 2015-Ohio-3186.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

In re Guardianship of Isabelle A. Hilt          Court of Appeals No. S-14-010

                                                Trial Court No. 20122035

                                                **DECISION AND JUDGMENT**

                                                Decided:  August 7, 2015

* * * * *

Howard C. Whitcomb, III, for appellant/cross-appellee.

Alan R. McKean, Pamela A. McKean and Martin D. Carrigan,
for appellees/cross-appellants.

* * * * *

**PIETRYKOWSKI, J.**

## I.  Introduction

{¶ 1} This is an appeal and cross-appeal from the judgment of the Sandusky County Court of Common Pleas, Probate Division, which denied appellant's, Thomas Hilt, and cross-appellants', Peter Hilt and Laura Smith, applications for appointment as

guardian of the ward, Isabelle Hilt, and ordered that the current guardian continue in her appointment for an indefinite period of time. For the reasons that follow, we affirm.

{¶ 2} Thomas, Peter, and Laura are the children of Isabelle. The record indicates that on May 4, 2012, Thomas filed a motion in the Ottawa County Probate Court for an emergency guardianship of Isabelle due to her alleged incompetency. On June 26, 2012, following a hearing, the Ottawa County Probate Court declared Isabelle incompetent by reason of mental impairment, and appointed Bree Noblitt Brown as her guardian. The case was subsequently transferred to the Sandusky County Probate Court when Isabelle changed residences. The present matter was initiated in the Sandusky County Probate Court on November 5, 2012, when Isabelle's children each applied to be appointed guardian. Thomas applied to be appointed guardian of the person and estate of Isabelle. Peter and Laura applied to be appointed guardian of the person only and estate only, respectively.[1]

{¶ 3} The trial court held a hearing on the competing applications for guardianship over two days in March and May 2013. The facts elicited from the hearing and record reveal that in April 2002, Isabelle established a trust for her benefit, naming herself and Thomas as co-trustees. Eventually, Isabelle resigned, leaving Thomas as the sole trustee. At the time of the hearing, Thomas was a financial advisor, and he indicated that the trust

---

[1] Thomas and Laura also petitioned to be named guardian of the person and estate while the proceedings were before the Ottawa County Probate Court. A consent judgment entry was entered on July 3, 2012, in which the parties consented to Brown being appointed temporary guardian for an undetermined period.

2.

was being managed for no fee, and was yielding textbook returns. As trustee, and also as Isabelle's power of attorney, Thomas testified that he was primarily responsible for ensuring that Isabelle's needs were cared for. Beginning in late 2011, Thomas received reports and began to notice signs that Isabelle's mental health was deteriorating. Consequently, Thomas took Isabelle to see her longtime family physician, who determined by March 2012 that Isabelle was no longer competent to manage her own affairs.

{¶ 4} As a result of Isabelle's condition, Thomas began searching for a suitable living arrangement for Isabelle as he was of the opinion that she was no longer capable of living by herself in her home. Thomas settled on an assisted living facility at Otterbein. He took Isabelle to visit the facility, but she expressed her displeasure and indicated that she did not want to leave her home. Nevertheless, on April 20, 2012, Thomas admitted Isabelle to Otterbein. On that day, Thomas picked his mother up at her home, and took her out for the day to go shopping and to have her hair done. While they were out, Isabelle's belongings were moved into a unit at Otterbein. At the end of the day, Thomas drove Isabelle to her new residence at Otterbein where all of her furnishings were set up as they had been at her house.

{¶ 5} Isabelle was upset by the move, and reached out to Peter and Laura for their help. Peter contacted the local police department, and an adult protective services investigation was conducted in the beginning of May 2012. The adult protective services worker testified that her evaluation of Isabelle indicated that Isabelle was able to "self-

3.

determinate" as of May 17, 2012. Furthermore, she found that abuse had occurred based on the manner in which Isabelle was moved to Otterbein.

{¶ 6} Concurrently, Peter and Laura also contacted an attorney, and were referred to Linda Kroeger-Baum. Kroeger-Baum met with Isabelle and acted upon Isabelle's wishes to revoke the power of attorney granted to Thomas, and to grant powers of attorney to Peter and Laura. Those documents were executed on May 2, 2012. Included in the power of attorney form was a clause nominating Peter and Laura as Isabelle's guardian. Eventually, Isabelle was returned to her home in Fremont, Ohio, by July 2012.

{¶ 7} At the hearing on the guardianship applications, the parties presented evidence and were cross-examined regarding their relative suitability to be appointed guardian over Isabelle. Much of the testimony had its origin and related to a family dispute that occurred several years earlier. When the parties' father passed away, a testamentary trust was created. Thomas and Laura were named as co-trustees of that trust. At some point, Laura disagreed with some of the decisions that Thomas was making, and filed a court action to resolve the dispute. Notably, Isabelle came to believe that Laura was bringing the action against her. The matter eventually settled, however it had created a fissure in the family relationships. The testimony revealed that for a couple of years, Laura had minimal contact with her mother. Peter allegedly also had a period where he did not have a close relationship with Isabelle. However, several months before Isabelle was moved to Otterbein, Peter and Laura had been working to mend their relationships with her. Notably, their relationship with Thomas has not been repaired.

4.

The lack of a relationship between Thomas and Peter and Laura caused Brown to be concerned that if one or several of the children were named guardian, there would be insufficient communication between them.

{¶ 8} As to their qualifications to be guardian, Thomas testified that he has been helping his mother manage her financial affairs since the death of his father, and that he has had the most stable relationship with Isabelle. He stated that the act of moving Isabelle to Otterbein was consistent with the recommendation of her family doctor, and that he had solicited the advice of several people in determining how to make the transition. On cross-examination, it was noted that Thomas lives approximately one and one-half hours away from Isabelle, and that his job sometimes takes him out of town. Further, Thomas was asked if his lack of a relationship with his siblings would hinder his ability to be guardian, to which Thomas replied that he would do whatever the court required him to do.

{¶ 9} In support of his application to be guardian of the person, Peter testified that he is very close with his mother, and visits her several times a week. Peter acknowledged that an allegation was made that there was a period where he had little contact with his mother, but he denied the allegation and insisted that he continuously had contact with her. In addition, Peter testified that he is the closest in proximity to Isabelle, and is able to be at her home within 30 minutes. Peter is also the person on whom Brown relied the most at the beginning of the guardianship to give her access, and that he has continued to ease the guardian's burdens by checking in on Isabelle, occasionally taking her to

5.

doctor's appointments, and acting as another line of communication with the caregivers that come to Isabelle's home. Regarding why he was seeking to be appointed guardian of the person only, Peter admitted to having been convicted of several crimes involving dishonesty, including theft and writing a bad check.

{¶ 10} Laura testified that she would be a suitable guardian of the estate. She stated that, as the only daughter, she has a unique, close relationship with Isabelle. She talks with her mother several times a week, and has stayed with her whenever Isabelle had surgeries. Further, she testified that she has had a power of attorney for her aunt, and has managed the aunt's financial affairs for the past 12 years. Finally, she offered that she has a close relationship with Peter, and if Peter were named guardian of the person, she does not anticipate any issues in communication between the two of them. She also stated that she would communicate with Thomas if he were named guardian of the person.

{¶ 11} At the end of the trial, the court commented that it was evident that all of the children loved their mother, and that Isabelle loved all of her children. Further, the court recognized that this was not a situation where one of the children was trying to harm Isabelle; instead they all wanted to do what was best for Isabelle, but disagreed on what that should look like.

{¶ 12} Following the hearing, on February 20, 2014, the trial court entered its judgment, denying Thomas's, Peter's, and Laura's guardianship applications. In its judgment, the court stated "there were either consents, or at least acknowledgments, that

6.

there was a need for a guardianship to be established/continued, due to the ward's incompetence at that time; as well as further evidence establishing that there is no doubt as to the underlying need for a guardian." Further, the court found:

17. That each applicant has distinctive, potentially disqualifying issues, as detailed on the record; including serious communication resistance with siblings, convictions for offenses of dishonesty, practical problems created by geographic distance, complications that arise from a desire or ability to only serve as guardian of the person or estate, and other various lapses in judgment as to their respective handling of certain situations and interactions with their mother and each other.

18. That the Court is specifically finding that all three of the applicants are in fact unsuitable to be named guardian of the ward in this matter.

The court, therefore, ordered that Brown continue in her appointment as the guardian of the person and estate for an indefinite period of time.

## Assignments of Error

{¶ 13} Thomas has appealed the trial court's February 20, 2014 judgment, raising two assignments of error for our review:

I. THE TRIAL COURT'S DENIAL OF APPELLANT'S APPLICATION FOR APPOINTMENT AS GUARDIAN CONSTITUTED AN ABUSE OF DISCRETION.

7.

II.  THE TRIAL COURT'S SUMMARY DENIAL OF

APPELLANT'S APPLICATION FOR APPOINTMENT AS GUARDIAN

WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 14}** Peter and Laura have likewise cross-appealed, assigning as error:

I.  THE LOWER COURT INCORRECTLY RULED ON THE

ISSUES BEFORE IT.

**Analysis**

**{¶ 15}** At the outset, we recognize that a probate court's decision regarding the appointment of a guardian will not be reversed absent an abuse of discretion.  *In re Guardianship of Scobie*, 6th Dist. Lucas No. L-07-1177, 2008-Ohio-364, ¶ 17; *In re Estate of Bednarczuk*, 80 Ohio App.3d 548, 551, 609 N.E.2d 1310 (12th Dist.1992).  An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 16}** We will begin with Thomas's assignments of error, and because they are related, we will address them together.  In his first assignment of error, Thomas contends that the trial court's judgment constituted an abuse of discretion because (1) it did not articulate a reason why the application was denied, (2) it resulted in the status quo being maintained, which will further deplete Isabelle's limited resources, and (3) it did not articulate a specific finding that Isabelle was incompetent.

8.

{¶ 17} In response to his third argument, we agree with the premise that "When a court considers a motion for appointment of a guardian, it must make a two-part determination: '(1) it must first determine that a guardian is required; and (2) it must also determine who shall be appointed guardian.'" *In re Guardianship of Biro*, 6th Dist. Ottawa No. OT-10-024, 2011-Ohio-1834, ¶ 16, quoting *In re Guardianship of Friend*, 8th Dist. Cuyahoga No. 64018, 1993 WL 526643 (Dec. 16, 1993). However, the record reveals that Isabelle had already been declared incompetent by the Ottawa County Probate Court on June 26, 2012, in accordance with R.C. 2111.02. Further, the parties— including Isabelle as represented by her attorney and guardian—in the proceeding before the Sandusky County Probate Court conceded that Isabelle was still in need of a guardian, and the trial court stated in its judgment that there was "evidence establishing that there is no doubt as to the underlying need for a guardian." Thus, we find Thomas's argument that the court abused its discretion by not first finding Isabelle incompetent to be without merit.

{¶ 18} In his first argument, Thomas contends that the trial court abused its discretion because it did not articulate why his application was denied. Contrary to Thomas's assertion, however, the trial court specifically found that Thomas was not suitable. In making its finding, the court referenced several factors that can be attributed to Thomas from the record: "serious communication resistance with siblings, * * * practical problems created by geographic distance, * * * and other various lapses in

9.

judgment as to their respective handling of certain situations and interactions with their mother and each other." Thus, Thomas's first argument is without merit.

{¶ 19} Thomas's remaining argument in support of his first assignment of error goes to the wisdom of the trial court's decision to continue Brown's appointment as guardian. Similarly, Thomas's second assignment of error asserts that the trial court erred when it found him to be unsuitable. In support of that assignment of error, Thomas highlights that he is best positioned to be Isabelle's guardian because (1) he is a financial advisor, (2) he has consistently and successfully managed Isabelle's investments for no fee, (3) he has Isabelle's best interests in mind, (4) he has continuously taken care of Isabelle since his father passed, (5) his relationship with Isabelle is stronger than that of his siblings, and (6) he does not anticipate having any communication problems with his siblings.

{¶ 20} "In making a determination as to who should serve as a guardian, the probate court's primary responsibility is to ensure that the person appointed will act in the best interests of the ward." *In re Guardianship of Thomas*, 148 Ohio App.3d 11, 2002-Ohio-1037, 771 N.E.2d 882, ¶ 96 (10th Dist.). Here, we do not find that the trial court acted unreasonably, arbitrarily, or unconscionably when it determined that the continued appointment of Brown as guardian is in Isabelle's best interest. Although the continued appointment of Brown will be more costly to the estate, and although Thomas has some qualities that would support him being a suitable guardian, the potential lack of communication between Thomas and his siblings as evidenced by their fractured

10.

relationship, the practical difficulty of Thomas living one and one-half hours away, and the manner in which Thomas decided to execute Isabelle's move to Otterbein all support the trial court's determination. Therefore, we hold that the trial court's decision did not constitute an abuse of discretion.

{¶ 21} Accordingly, Thomas's first and second assignments of error are not well-taken.

{¶ 22} In their assignment of error on cross-appeal, Peter and Laura argue that the trial court erred when it failed to appoint them as guardians pursuant to R.C. 2111.121. Initially, we must address Peter and Laura's argument that because the issue turns on the interpretation of a statute, we should review the trial court's decision de novo. We disagree. As we will discuss, the trial court did not base its decision on an interpretation of the statute. Rather, the court's decision was based on the application of the statute in light of its determination that Peter and Laura were unsuitable to be appointed as guardians. Therefore, as with our analysis of Thomas's assignments of error, we will review the trial court's decision for an abuse of discretion.

{¶ 23} Turning to the merits of Peter and Laura's argument, R.C. 2111.121 authorizes an individual to nominate, in writing, persons to be named as guardian in the event the individual becomes incompetent. Division (B) of R.C. 2111.121, in effect at the time the nomination was made and at trial,[2] states:

---

[2] R.C. 2111.121(B) was amended effective March 20, 2014. The current version provides, in relevant part:

11.

If a person has nominated, in a writing as described in division (A) of this section, another person to be the guardian of the nominator's person, estate, or both, and proceedings for the appointment of a guardian for the person are commenced at a later time, the court involved shall appoint the person nominated as guardian in the writing most recently executed if the person nominated is competent, suitable, and willing to accept the appointment.

{¶ 24} Peter and Laura assert that they were nominated guardians in the power of attorney executed by Isabelle on May 2, 2012. Moreover, they assert that they are competent, suitable, and willing to accept the guardianship. Thus, they conclude that the trial court erred when it failed to appoint them as guardians "because they were so named in the power of attorney executed by Isabelle Hilt when she was competent to do so."

{¶ 25} However, as we recognized in *Scobie*, 6th Dist. Lucas No. L-07-1177, 2008-Ohio-364, at ¶ 22, the trial court is not required to "blindly give meaning to any valid power of attorney which identifies a prospective guardian." Instead, appointment of the nominated person is required only where the court has determined that the person is

---

A person's nomination, in a writing as described in division (A) of this section, of a guardian of the nominator's person, estate, or both * * * is revoked by the person's subsequent nomination, in a writing as described in division (A) of this section, of a guardian of the nominator's person, estate, or both * * * and, except for good cause shown or disqualification, the court shall make its appointment in accordance with the person's most recent nomination.

"competent, suitable, and willing to accept the appointment." *Id.* Here, the trial court found that Peter and Laura were not suitable. Specifically, the trial court referred to their communication issues with Thomas, Peter's convictions for offenses of dishonesty, the complications that arise from serving only as guardian of the person or estate, and "other various lapses in judgment as to their respective handling of certain situations and interactions with their mother and each other." Based on the court's findings as supported by the record, we cannot conclude that the trial court abused its discretion when it denied Peter's and Laura's applications to be appointed guardian.

{¶ 26} Accordingly, Peter and Laura's assignment of error on cross-appeal is not well-taken.

{¶ 27} For the foregoing reasons, we find that substantial justice was done the parties complaining and the judgment of the Sandusky County Court of Common Pleas, Probate Division is affirmed. Pursuant to App.R. 24, costs of this appeal are to be split evenly between appellant and cross-appellants.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____
                                                                            JUDGE

Thomas J. Osowik, J.
                                                        _____
Stephen A. Yarbrough, P.J.                                                  JUDGE
CONCUR.

                                                        _____
                                                                            JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.