{¶ 1} Irene Collins (appellant) appeals the probate court's decision appointing Charles Webster as guardian over her husband John C. Collins' (the ward) person and estate. After reviewing the facts of the case and pertinent law, we affirm.
 I {¶ 2} In early 2005, the ward began to show signs of dementia and probable Alzheimer's disease, and appellant, who has been married to him since 1959, placed him in an assisted-living facility. On April 14, 2005, Terry Collins (Terry), who is appellant's and the ward's son, filed an application to be appointed the ward's guardian. On August 24, 2005, Angela Carlin, an attorney representing the ward's three children from his first marriage, also filed an application to be appointed the ward's guardian, because the three children were opposed to Terry's application.
 {¶ 3} On August 31, 2005, the court conducted a hearing to consider the two pending applications. All parties were present and represented by counsel at the hearing. The magistrate who conducted the hearing indicated to all parties that consideration would be given to any applicant who applied for guardianship.
 {¶ 4} At that time, appellant indicated that she was recovering from a recent surgery and that she supported her son Terry's application for guardianship. She also indicated that she might file an application at a later time. The magistrate indicated that if a subsequent application was filed, no additional hearing would be scheduled; rather, the application would be taken into consideration based on testimony given that day.
 {¶ 5} On September 15, 2005, appellant filed her own application to be appointed the ward's guardian. On December 20, 2005, the magistrate issued a decision, finding that the ward was incompetent and required a guardian. The magistrate further recommended that "the best interests of John Collins would be served by the appointment of an independent third party and that none of the three applications for guardianship should be granted. This finding is based upon the evidence and testimony of the witnesses which clearly established family hostility between children of the first marriage and children of the second marriage." The three applications the court refers to are Terry's, Carlin's and appellant's. Regarding appellant's application, the court stated the following: "Irene Collins' application was filed September 15, 2005 after the evidence was previously taken. Her application and testimony [were] considered in the determination herein. She supported Terry's application for guardianship and did not address the appropriateness of her application at the August 31st hearing. Notwithstanding that, the magistrate finds that the family hostility is such that an independent person outside of the family and not aligned with any of the family members should be appointed."
 {¶ 6} Subsequently, the ward, appellant, and Terry filed objections to the magistrate's decision. On February 9, 2006, a hearing was held regarding these objections, and arguments were heard from counsel representing the ward, appellant, and Terry. Furthermore, the three children from the ward's first marriage argued in support of the magistrate's recommendation to appoint an independent third party as the ward's guardian.
 {¶ 7} On February 17, 2006, Charles Webster (Webster) filed an application to be appointed the ward's guardian. On March 3, 2006, the court ordered that Webster be appointed the ward's guardian, and on March 31, 2006, the court entered a nunc pro tunc order, effective March 3, 2006, adopting the findings and conclusions of the magistrate, overruling the objections to the magistrate's decision, and rejecting the guardianship applications of Terry, Carlin and appellant.
 II {¶ 8} In her first assignment of error, appellant argues that "the trial court erred by denying appellant, John C. Collins' wife of over 45 years the opportunity to be heard on her application to serve as guardian of her husband, thereby denying her due process of law in violation of the guarantees afforded by the constitutions of the United States and the State of Ohio, warranting the reversal of the appointment of a stranger as her husband's guardian."
 {¶ 9} Pursuant to R.C. 2111.02, the probate court may appoint a guardian over a person who, by clear and convincing evidence, has been proven to be incompetent. Prior to the appointment, the court is required to conduct a hearing to safeguard certain rights of the proposed ward. R.C. 2111.02(D). Additionally, R.C. 2111.04 governs the notice requirements when appointing a guardian for an alleged incompetent, and it states that the court shall not appoint a guardian until it notifies the following persons regarding the time and place of the scheduled hearing: "the person for whom appointment is sought * * * [and] the next of kin of the person for whom appointment is sought who are known to reside in this state."
 "Compliance with the notice provisions as set forth above assures that those affected by the proposed guardianship are given the opportunity to be heard and afforded their right to due process. In addition, R.C. 2111.03 requires that any person applying for appointment as a guardian, 'shall file with the probate court an application that contains a statement of the whole estate of the ward, its probable value, and the probable annual rents of the ward's real property.' In our view, absent exigent circumstances, in order to comply with statutory requirements, the court must provide notice to the ward and any interested parties even when sua sponte appointing a guardian. Such notice preserves all parties' rights to request a hearing to present evidence regarding the suitability of the proposed guardian."
In re Guardianship of Simmons, Wood App. No. WD-02-039, 2003-Ohio-5416.
 {¶ 10} In the instant case, the record reflects that a hearing was held on August 31, 2005 regarding two applications for appointment of guardian over the ward. According to the record, the ward and his next of kin were notified of, and present at, this hearing, thus fulfilling the procedural statutory requirements. Although appellant had not filed her application at the time, she was present at the hearing and she did, in fact, testify. Additionally, the court informed appellant that if she wished to file an application at a later time, a subsequent hearing regarding appointing a guardian would not be scheduled. Furthermore, the court held a hearing on February 9, 2006, regarding appellant's, among others, objections to the magistrate's decision, recommending appointment of Webster as the ward's guardian. Again, appellant was present at this hearing. We review the probate court's appointment of a guardian over an incompetent for an abuse of discretion. "The paramount concern is the welfare of the ward and absent an abuse of discretion the probate court's decision will not be disturbed." In re Tutt (Aug. 31, 2000), Cuyahoga App. No. 77028.
 {¶ 11} In the instant case, not only was appellant's right to request a hearing preserved when the court served her with notice of the August 31, 2005 hearing, she was present at that hearing, she was heard, and she did not request to be appointed her husband's guardian at that time, despite the fact that the court informed all parties no further hearings would be held. Two weeks later, when she filed her application to be appointed guardian, she did so knowing that the court would take her application into consideration based on her previous testimony. Appellant points to, and we can find, no law requiring the court to hold an additional hearing. See In re Guardianship of Hill (1963), 196 N.E.2d 816 (holding that "[w]here the probate court appoints a guardian for an incompetent, either on its own motion or pursuant to an application made in accordance with Ohio Rev. Code Ann. § 2111.03, there is no statutory requirement for a hearing on every other application which may have been filed pursuant to § 2111.03. In such an instance, the probate court can apparently either decline to have a hearing on what would then have become a superfluous application for appointment, overrule such application without hearing or dismiss it without hearing as involving a moot matter").
 {¶ 12} Accordingly, appellant's argument that her due process rights were violated is without merit, and her first assignment of error is overruled.
 III {¶ 13} In her second and final assignment of error, appellant argues that "the trial court erred when it failed to properly exercise the discretion granted to it by O.R.C. Chapter 2111, in appointing appellee, Charles K. Webster, as guardian for appellant's husband, John C. Collins." Specifically, appellant does not argue that the court erred in appointing Webster as guardian; rather, she argues that the court erred by failing to appoint her as guardian, when it "perversely and unjustly interposed its will between the marital union for no apparent reason * * * by preventing her from exercising her marital duty to provide care for her husband * * *."
 {¶ 14} Ohio courts have held that there is no statutory preference for who should be appointed the guardian of a person declared incompetent: "Although courts generally select the next of kin or those with familial ties or someone acceptable to such persons on the theory that they will be the ones most concerned with the ward's welfare, they have great discretion in this matter and are not required to do so. Courts may appoint a stranger as guardian if it is in the best interest of the incompetent." In re Guardianship of Terzano (Dec. 7. 1990), Lake App. No. 90-L-14-050. In Terzano, the probate court concluded that an independent guardian "who would objectively administer the affairs of the ward" was in the ward's best interest because of "familial acrimony." The Eleventh District Court of Appeals found that this conclusion was well within the probate court's discretion. Id.
 {¶ 15} In the instant case, no transcript of the proceedings was filed; however, from the magistrate's December 20, 2005 decision, we glean the following information. The ward's three children from his first marriage were opposed to Terry being appointed guardian. Appellant was originally in favor of Terry being appointed guardian, however, she testified that she did not feel that the ward required a guardian, as she and Terry "could manage him without the necessity of court involvement." Ultimately, appellant changed her mind and submitted her own application to be appointed guardian. Furthermore, appellant testified that her husband's children from his first marriage "are trying to take the ward's money rather than preserve the best interests of their father." The manager of the nursing home where the ward resides testified that conflict occurs when Marc, one of the ward's children from his first marriage, visits the ward. Terry testified that he has had several disputes with Marc regarding business and financial affairs, including the ward's assets, which are valued at approximately $1.5 million. Two of the ward's children from his first marriage testified that they have had unfavorable experiences with Terry regarding their father and they support the appointment of a third-party guardian.
 {¶ 16} The magistrate recommended that an independent, neutral guardian be appointed, "based upon the evidence and testimony of the witnesses which clearly established family hostility between children of the first marriage and children of the second marriage." We can find no abuse of discretion in the court's adopting this recommendation. How well-qualified the appellant may be to serve as the ward's guardian becomes immaterial when the court finds that "an independent person outside of the family and not aligned with any of the family members should be appointed." Given this, coupled with the fact that appellant offers no argument why Webster should not have been appointed as the independent guardian, appellant's second and final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P. J., and ANN DYKE, J., CONCUR.