**In re GUARDIANSHIP OF WALLER.**

[Cite as *In re Guardianship of Waller*, 192 Ohio App.3d 663, 2011-Ohio-313.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–100131.

Decided Jan. 28, 2011.

James H. Banks, for appellant, Sandra Givens.

Rendigs, Fry, Kiely & Dennis, L.L.P., and Curtis E. Kissinger, for appellee, Paul F. Wenker.

Katz, Greenberger & Norton, L.L.P., and Louis H. Katz, for ward, Harold Waller.

Dɪɴᴋᴇʟᴀᴄᴋᴇʀ, Judge.

## I. Facts and Procedure

{¶ 1} Appellant, Sandra Givens, appeals a decision of the Hamilton County Court of Common Pleas, Probate Division, appointing appellee, Paul Wenker, as guardian of the estate and Wanda Bevington as guardian of the person of Harold Waller. We find no merit in Givens's two assignments of error, and we affirm the probate court's judgment.

{¶ 2} Harold Waller was a pharmacist who had for many years owned his own pharmacy and the building in which it was located. He had also acquired numerous rental properties. He never married, and he had no children.

{¶ 3} A neurologist diagnosed Waller with Alzheimer's disease, in a mild to moderate stage, with significant cognitive impairment. She recommended that a guardian be appointed for him and that he live in an assisted-living facility for persons with memory impairment.

{¶ 4} Wenker, Waller's long-time attorney, filed an application to be appointed the guardian of his person and estate. Wenker had met Waller over 30 years earlier when he helped Waller acquire a piece of real estate. Wenker is an attorney with an L.L.M. in tax, and his practice includes, among other things, taxation, corporations, and real estate. He had continued to help Waller acquire and manage his properties over the years. He had arranged to put Waller's properties into limited-liability corporations and then into a trust. Waller was the trustee and Wenker was the successor trustee. Waller had also granted to Wenker his power of attorney in a succession of documents over the years.

{¶ 5} Waller had been in the hospital for a surgical procedure. Following his release from the hospital, Wenker had arranged for him to live at the Hyde Park Care Center. He lived in a locked unit and could only have visitors whose names were on an approved list. Waller was unhappy there and referred to it as "a prison." The evidence showed that it was "more restrictive than necessary given his * * * level of functioning."

{¶ 6} Givens, Waller's niece, also filed an application to be appointed the guardian of his person and estate. She is a registered nurse and had worked at University Hospital for over 30 years. She testified that she had invited Waller to family functions, but that he had never attended. She described her uncle as a confirmed bachelor who was married to his work. Givens further testified that she had always cared for her relatives, including Waller's mother. She said that she was willing to have Waller live with her. She acknowledged, though, that she had no knowledge of his real estate holdings or business dealings.

{¶ 7} Givens's relationship with Waller was strained due to an incident at Waller's medical building when she and other relatives had allegedly taken documents and, possibly, controlled substances out of the pharmacy. That incident had resulted in criminal charges and a restraining order. Givens contended that the incident was a misunderstanding and that she had been cleaning out the pharmacy. Although the charges were later dropped, Givens did not think that she would be permitted to see Waller at the care center without repercussions.

{¶ 8} Waller, who had periods of lucidity, had stated that he did not want Givens to be his guardian. He had also expressed distrust of Wenker. Further, the record shows that Wenker and Givens had "mistrust of each other[,] if not downright animosity," and that they would have had difficulty working together.

{¶ 9} Givens felt that Wenker was trying to break up their family and cut Waller off from the people closest to him. The trial court found, and the evidence showed, that Wenker had done a "good job" managing Waller's properties. But he was instrumental in terminating the employment of Elizabeth Robinson, Waller's long-time assistant, filing the stalking charges and obtaining a restraining order against Givens, Robinson, and other family members, evicting Waller's other niece from one of his rental units, and restricting Waller's visitors at the care center.

{¶ 10} Wenker had also hired his assistant's husband to manage Waller's properties even though the husband had no experience in the field. Nevertheless, Waller testified that he was generally happy with the work performed and with the way his properties were maintained.

{¶ 11} A magistrate found that Wenker was "a suitable person to be appointed the Guardian of the Estate for Harold Waller. He has been helping Waller manage his business affairs for over twenty years. It would be difficult to find anyone else as knowledgeable about Mr. Waller's portfolio of properties and assets and who could manage them competently."

{¶ 12} The magistrate gave "a great amount of consideration" to the relationship among Givens, Wenker, and Waller's friends, family members, and business associates. She expressed concern about Waller's living conditions. She stated, "Mr. Waller has the right and deserves to be in the least restrictive setting possible. * * * Mr. Waller has been, as he puts it, 'imprisoned,' on a locked unit for many months when he appears to be able to get around physically and capable of more freedom. Mr. Wenker's plan is to leave him there."

{¶ 13} The magistrate found that neither Wenker nor Givens was suitable to be appointed as guardian of Waller's person. Consequently, it appointed Bevington, the CEO of Personal Guardianship Services, "a highly experienced independent

guardian." The magistrate specifically stated that "[a]ppointing an independent guardian is in Mr. Waller's best interest."

{¶ 14} Both Waller and Givens objected to the magistrate's decision. The trial court overruled the objections, adopted the magistrate's decision, and issued some supplemental orders. This appeal followed.

{¶ 15} In her first assignment of error, Givens contends that the trial court erred in appointing Bevington as guardian of Waller's person. She argues that the court abuses its discretion when it fails to appoint the next of kin as guardian of the ward's person. In her second assignment of error, she contends that the trial court erred in appointing Wenker as the guardian of the estate. She argues that the court's decision was against the manifest weight of the evidence. These assignments of error are not well taken.

## II. Appointment of Guardians in General

{¶ 16} R.C. 2111.02(A) provides that "[w]hen found necessary, the probate court on its own motion or on application by any interested party shall appoint * * * a guardian of the person, the estate, or both, of a minor or incompetent[.]" Guardianship proceedings are not adversarial, and the probate court must act in the best interests of the incompetent person.[1] The court has broad discretion in appointing a guardian.[2] A reviewing court will not reverse a judgment appointing a guardian as an abuse of discretion if it is supported by competent, credible evidence.[3]

{¶ 17} Generally, the court should appoint the same person as guardian of the person and estate of the ward, unless the court determines that "the interests of the ward will be promoted by the appointment of different persons as guardians of the person and of the estate."[4] A guardian of the person is responsible for the care and well-being of the ward.[5] He or she has the duty to protect and control the ward's person.[6] A guardian of the estate is responsible

---

1. *In re Guardianship of Slone*, 3d Dist. No. 3–04–13, 2004-Ohio-6041, 2004 WL 2581081, ¶ 8; *In re Estate of Bednarczuk* (1992), 80 Ohio App.3d 548, 551, 609 N.E.2d 1310.

2. *Slone*, at ¶ 7; *In re Guardianship of Thomas* (2002), 148 Ohio App.3d 11, 21, 771 N.E.2d 882; *Bednarczuk*, at 551, 609 N.E.2d 1310.

3. *In re Guardianship of Miller*, 187 Ohio App.3d 445, 2010-Ohio-2159, 932 N.E.2d 420, ¶ 3; *In re Poliksa*, 1st Dist. No. C–050474, 2006-Ohio-2617, 2006 WL 1449533, ¶ 10.

4. R.C. 2111.06; *In re Tutt* (Aug. 31, 2000), 8th Dist. No. 77028, 2000 WL 1231477.

5. *In re Guardianship of Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, ¶ 2.

6. R.C. 2111.13(A).

for the management of the ward's property.[7]  He or she must manage the estate for the best interests of the ward, pay just debts, defend suits against the ward, and institute suits for the ward.[8]

### III.  Appointment of Wenker as Guardian of the Estate

{¶ 18} In this case, competent, credible evidence supported the probate court's decision that it was in Waller's best interest to appoint Wenker as guardian of Waller's estate because of his long-time association with Waller and his knowledge of Waller's properties and investments.  In contrast, Givens had no knowledge or understanding of Waller's business affairs.

{¶ 19} Givens argues that Wenker had engaged in questionable practices and had failed to act in Waller's best interest.  The evidence showed, and the trial court found, that Wenker had done a good job of managing Waller's assets and had taken "proper care" of his business affairs.  The only "possible exception," the court found, was the hiring of Wenker's assistant's husband to manage Waller's properties when he had no experience in the field.  Nevertheless, that decision did not result in prejudice to Waller, and he acknowledged that he was generally happy with the management of his properties.

{¶ 20} Givens further contends that the evidence showed that Waller did not trust either applicant and that the trial court had employed a "double standard" in holding that lack of trust against Givens, but not against Wenker.  The evidence showed, though, that Waller had trusted Wenker with his business for many years and had only recently, since the onset of his mental disability, expressed distrust in him.  In contrast, Waller had specifically stated that he did not want Givens to be his guardian.

{¶ 21} Further, the court appointed an attorney for the guardian of the estate "to ensure that Mr. Waller's interests are fully and completely protected."  It ordered that attorney to review all of Waller's financial records.

{¶ 22} Under the circumstances, competent, credible evidence supported the probate court's decision that it was in Waller's best interest to appoint Wenker as guardian of Waller's estate.  Consequently, we cannot hold that the trial court abused its discretion in appointing him.

### IV.  Appointment of Bevington as Guardian of the Person

{¶ 23} Further, we cannot hold that the trial court abused its discretion in appointing Bevington, an independent third party, as the guardian of Waller's

---

7.  *Santrucek,* at ¶ 2.

8.  R.C. 2111.14; *In re Guardianship of Bombrys,* 6th Dist. No. L-08-1069, 2008-Ohio-3851, 2008 WL 2940798, ¶ 15.

person rather than Givens. Given the evidence showing the animosity between Wenker and Givens, Waller's mistrust of Givens, her lack of contact with Waller despite being his niece, and the restraining order resulting from the incident at the pharmacy, we cannot hold that the trial court abused its discretion in failing to appoint Givens as guardian of Waller's person.

{¶ 24} Givens argues that the trial court should have appointed her as the guardian of Waller's person because she was his next of kin. But Ohio does not have a statutory preference for the appointment of guardians.[9] "Although courts generally select the next of kin or those with familial ties or someone acceptable to such persons on the theory that they will be the ones most concerned with the ward's welfare, they have great discretion in this matter and are not required to do so."[10] Courts may appoint a stranger as guardian if it is in the ward's best interest.[11]

{¶ 25} Competent, credible evidence supported the trial court's decision to appoint a stranger as guardian rather than Givens. The animosity between Givens and Wenker, as guardian of the estate, would have been sufficient, by itself, to support that decision. When the interested parties cannot cooperate, "the better approach is to consider and appoint a disinterested third party who will relay information and work together with all interested parties."[12] Consequently, we cannot hold that the probate court abused its discretion in appointing Bevington, an experienced professional guardian, as the guardian of Waller's person.

### V. Summary

{¶ 26} In sum, we hold that the probate court did not abuse its discretion in appointing Wenker as guardian of Waller's estate and Bevington as guardian of his person. We overrule Givens's two assignments of error and affirm the trial court's judgment.

Judgment affirmed.

CUNNINGHAM, P.J., and HENDON, J., concur.

---

9. *In re Estate of Collins*, 8th Dist. No. 87978, 2007-Ohio-631, 2007 WL 475422, ¶ 14; *In re Guardianship of Terzano* (Dec. 7, 1990), 11th Dist. No. 90–L–14–050, 1990 WL 199103.

10. *Terzano.*

11. *Collins*, at ¶ 14; *Terzano.*

12. *In re Simmons*, 6th Dist. No. WD–02–039, 2003-Ohio-5416, 2003 WL 22319415, ¶ 20.