**[Cite as *Whitson v. Whitson*, 2019-Ohio-4235.]**

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| DOLLY WHITSON | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 19CA32 |
| ELIZABETH WHITSON | : | |
| | : | |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court of
                             Common Pleas, Domestic Relations
                             Division, 2018PCU0699

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      October 10, 2019

APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant

RICHLAND COUNTY PROSECUTOR           ELIZABETH WHITSON #W-099514
38 S. Park Street – 2nd Floor        Northeast Reintegration Center
Mansfield, OH 44902-1717             2675 East 30th Street
                                     Cleveland, OH 44115

*Gwin, P.J.*

{¶1} Defendant-appellant Elizabeth Whitson ["Mother"] appeals the April 1, 2019 Judgment Entry of the Richland County Court of Common Pleas, Domestic Relations Division's decision that dismissed her Counterclaim and certified Plaintiff- Appellee Dolly Whitson's ["Paternal Grandmother"] Complaint for Legal Custody to the Richland County Court of Common Pleas, Juvenile Division pursuant to R.C. 3109.04(D)(2)[1].

*Facts and Procedural History*

{¶2} Mother has been in prison since October 2017 on three felony drug convictions. Father and Mother have three children, S.W. (b. Nov. 27. 2001); L.W. (b. Dec. 11, 2000); and G.W. (b. Jan. 6, 2004). Father and Mother are married but separated since approximately 2015.

{¶3} Paternal Grandmother filed a Complaint for temporary legal custody and legal custody of the children on September 7, 2018; and an Amended Complaint for temporary legal custody and legal custody of the minor children on September 20, 2018. This case was initiated because father and grandmother became aware that Mother was incarcerated and had left the children in the care of friends.

{¶4} Paternal Grandmother was granted temporary legal custody of the minor children pursuant to an Ex Parte Order filed on September 7, 2018. Mother filed an Answer and Counterclaim for Legal Custody on October 2, 2018, stating in relevant part,

4. The children have visited with me regularly during my term of incarceration. I am requesting this court to allocate parental right and responsibilities, such that I can maintain my visitation and parenting time

---

[1] Appellee did not file a Brief in this Court. The father of the children did not appear in the lower court proceedings either in person or through counsel.

with my children, along with telephone calls, letters, cards, email, and other forms of permitted communication.

5. I do not want the court to grant Permanent Custody of my children to Dolly Whitson. Prior to my incarceration the Plaintiff, Dolly Whitson, lived in Columbus, Ohio. My husband, James Scott Whitson, the other defendant, and I were separated prior to my incarceration. After I came to prison Dolly Whitson and James Scott Whitson moved into the house I lived in with my children and have lived there to maintain the status quo for the children's living arrangements. I desire to participate in the proceedings regarding the custody of my children and have filed along with this Answer/Counterclaim a Motion to Convey for the Court's consideration.

{¶5} Prior to their separation, Father and Mother, along with their children, resided together in the home located on Reed Street, Mansfield, Ohio. Paternal Grandmother owns the home. She purchased it approximately 11 years ago specifically so that her son and his family could reside in it. Although having lived separate and apart for the last couple of years, Mother and Father are still legally married. Soon after becoming aware of Mother's incarceration, Father and Paternal Grandmother moved into the Mansfield home to care for the children.

{¶6} On October 2, 2018, Mother filed a "Motion for Order to Convey or to Appear by Video, Telephone, Skype and/or an Alternative Method Acceptable to the Court." By Judgment Entry filed October 8, 2018, the trial court overruled Mother's request to attend the hearings in person; however, the Court allowed Mother to participate in pre-trial hearings by telephone. The Court noted that the Court does not have real-time video or

Skype capabilities. However, the trial court would permit Mother to conduct a videotape deposition for admission during the trial.

{¶7} By Magistrate's Order filed November 27, 2018, the court ordered that a Home Investigation be done.

{¶8} By scheduling entry filed February 11, 2019, the case was set for a two-hour trial on March 21, 2019[2]. In the Judgment Entry filed April 1, 2019, the trial court made the following findings,

> The home investigator visited the home on January 23, 2019. She observed that the home was clean, except for one upstairs bedroom that houses a dying dog. The dog urinates and defecates in the room, and the waste is not cleaned on a regular basis. The investigator observed a strong odor of urine emanating from that room and feces on the floor of the room. Sydney and Grace have chosen to sleep in the unfinished cellar of the home. The space where the girls sleep is dark, damp and musty. There is no heat source other than small, electric space heaters.

> Father is unemployed and does not have a valid driver's license. He is a habitual marijuana user and has been so since the age of 14. He smoked marijuana in front of the children frequently in the past but, at the time of the investigator's interview, stated that he only smoked marijuana outside of the home. The children are aware of his marijuana use and are able to tell when he has smoked. Recently, [G.W.], age 15, was caught smoking marijuana and admitted that she had been doing so for several

---

[2] Mother has not provided this Court with a transcript of the trial.

months. Father states he plans to obtain employment outside of Mansfield and to relocate. However, at the time of the hearing, he was still residing in the home with the children and grandmother. Grandmother stated that she would force her son to move out of the home if the Court made that a condition of her being awarded legal custody. Father supports legal custody being awarded to grandmother.

Grandmother is 70 years old and retired. She has numerous chronic health problems for which she takes 22 daily medications. She has had 10 different surgical procedures since 2016. She suffered a stroke while driving and failed to report it, or seek any treatment for it, until several days later when her son noticed her physical symptoms. She continues to have mobility issues and, at the time of this hearing, had an additional surgery scheduled.

Mother is currently incarcerated and is expected to be released in October of 2019. Prior to her incarceration, she was selling illegal drugs out of the home and in front of the children. Grandmother testified that she would exclude mother from the home if the Court so required.

The investigator is concerned that if mother returns to the home after her release, she might resume illegal activities in the presence of the children and with their knowledge.

The Home Investigation, Interview with Children at Father's Home, and collateral information were admitted into evidence. The Home Investigator recommended as follows:

"After careful thought and consideration this investigator is of the opinion that this case has many dynamics that are of concern and that will continue to be of concern in the future. Because of these concerns, this investigator feels that this case should be considered for transfer to Juvenile Court. This investigator is first concerned with the overall health of Dolly Whitson. During the interview it was also discussed that Dolly actually suffered a stroke while driving from Columbus to Mansfield and she never told anyone about it. It was only discovered several days later when her son James noticed physical changes with her. The children are also very concerned with Dolly's health and the large amount of drugs she takes daily. This investigator is also very worried that James Whitson resides in the home, smokes marijuana, and yet continues to parent the kids and enforce rules. This has been very difficult for the girls to adjust to after he was absent from the home for almost 2 years. There is also the concern that once released from prison Elizabeth Whitson would return to the home and could possibly return to the illegal world of dealing in drugs. Even if Elizabeth Whitson would avoid any illegal activities it has been reported that Elizabeth Whitson and her husband James Whitson would argue and fight without ever ceasing. It is also highly suspected that if Elizabeth Whitson would not return to this home, the girls including the youngest [G.W.] will do everything in their power to be/live with their mom Elizabeth Whitson. At this current time, this investigator feels that there are too many concerns

that need follow up to assess how the family is doing and that the kids are safe and having their needs met."

**{¶9}** The trial court made the following findings,

**Conclusions of Law**

O.R.C. section 3109.04(D)(2) provides: If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings, together with as much of the record and the further information, in narrative form or otherwise, that it considers necessary or as the juvenile court requests, to the juvenile court for further proceedings, and, upon the certification, the juvenile court has exclusive jurisdiction.

The second paragraph of O.R.C. section 3109.06 provides: In cases in which the court of common pleas finds the parents unsuitable to have the parental rights and responsibilities for the care of the child or children and unsuitable to provide the place of residence and to be the legal custodian of the child or children, consent of the juvenile court shall not be required to such certification.

*In re Perales* (1977), 52 Ohio St.2d 89, provides: "[P]arents may be denied custody only if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to

provide care or support, or that the parent is otherwise unsuitable that is, that an award of custody would be detrimental to the child."

**Decision**

The Court has considered all relevant factors, including those set forth in O.R.C. section 3109.04(F)(1), in determining the best interest of the children.

The Court finds that it is in the best interest of the children for neither parent to be designated the residential parent and legal custodian of them. The Court further finds that the parents are unsuitable to have the parental rights and responsibilities for the care of the children, and unsuitable to provide the place of residence and to be the legal custodian of them. Mother is incarcerated. Father is unsuitable due to his drug use, and total inability to provide care or support for the children. An award of custody to him would be detrimental to the children.

The Court declines to commit the children to grandmother. She has permitted the father to live in the home, and use and be under the influence of marijuana in the presence of the children. An award of custody to grandmother, without the support of the Juvenile Court, would be detrimental to the children.

The children appear to be dependent, neglected or abused.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant's Counterclaim for Legal Custody is dismissed.

IT IS FURTHER ORDERED that all prior orders of this Court remain in full force and effect, until further order of Richland County Juvenile Court.

IT IS FURTHER ORDERED that grandmother shall immediately obtain counseling for [G.W.]

IT IS FURTHER ORDERED that all issues regarding the allocation of parental rights and responsibilities/custody of the minor children, [S.W.] (born November 27, 2001) and [G.W.] (born January 6, 2004), are certified to the Richland County Juvenile Court for further proceedings.

*Assignments of Error*

{¶10} Mother raises three assignments of error,

{¶11} "I. THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION BY DETERMINING PARENTAL UNSUITABILITY CONTRARY TO R.C. 3109.04, AND WITHOUT APPELLANT'S PRESENCE AND/OR LEGAL REPRESENTATION WITHOUT GIVING APPELLANT A RIGHT TO BE HEARD.

{¶12} "II. THE TRIAL COURT ERRED IN NOT FOLLOWING THE REQUIREMENTS SET OUT IN R.C. 3109.04(D)(2).

{¶13} "III. THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE AND VIOLATED HER RIGHTS BY IMPERMISSIBLY RELYING ON THE INVESTIGATOR'S REPORT WITHOUT COMPLYING WITH THE REVISED CODE AND CIVIL RULES."

*Pro se Appellants*

**{¶14}** We understand that Mother has filed this appeal pro se. Nevertheless, "like members of the bar, pro se litigants are required to comply with rules of practice and procedure." *Hardy v. Belmont Correctional Inst.,* 10th Dist. No. 06AP-116, 2006-Ohio-3316, ¶ 9. See, also, *State v. Hall,* 11th Dist. No. 2007-T-0022, 2008-Ohio-2128, ¶11. We also understand that "an appellate court will ordinarily indulge a pro se litigant where there is some semblance of compliance with the appellate rules." *State v. Richard,* 8th Dist. No. 86154, 2005-Ohio-6494, ¶4 (internal quotation omitted).

**{¶15}** In *State v. Hooks*, 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528(2001), the Supreme Court noted, "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. See, *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500(1978)." It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty,* 4th Dist.No. 411, 1980 WL 350992 (Feb. 28, 1980), citing *Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 59, 201 N.E.2d 227(1963). New material and factual assertions contained in any brief in this court may not be considered. See, *North v. Beightler,* 112 Ohio St.3d 122, 2006-Ohio-6515, 858 N.E.2d 386, ¶7, quoting *Dzina v. Celebrezze,* 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶16. Therefore, we have disregarded facts and documents in Mother's brief that are outside of the record.

**{¶16}** In the interests of justice, we shall attempt to consider Appellant's assignments of error.

*Failure to File Transcript with the Trial Court*

**{¶17}** We first must address Mother's failure to present a transcript of the March 21, 2019 hearing in the trial court.

**{¶18}** Because the transcript of the proceeds has not been filed with this Court for purposes of appeal, it does not constitute part of the record on appeal. See App.R. 9(A). When an appeal is filed without a transcript, reviewing courts generally presume the regularity of that proceeding. *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010–Ohio–5073, 937 N.E.2d 1274, ¶ 14.

**{¶19}** In the case at bar, Mother has not provided this court with a transcript of the March 21, 2019 hearing. Absent a complete transcript, we are unable to review the facts underlying the trial court's decision to dismiss her Counterclaim and certify the decision to the juvenile court.

**{¶20}** In *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384(1980), the Supreme Court of Ohio held the following,

> The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See *State v. Skaggs* (1978), 53 Ohio St. 2d 162. This principle is recognized in App.R. 9(B), which provides, in part, that ' * * *the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record.* * *.' When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice

but to presume the validity of the lower court's proceedings, and affirm."

(Footnote omitted.)

Id. at 199, 400 N.E.2d 384.

**{¶21}** In *Robinson v. Custom Sports Cycle*, this Court noted,

While significant case law exists which would allow for a free transcript for an indigent criminal defendant, (see, e.g., *State v. Arrington* (1975), 42 Ohio St.2d 114, 326 N.E.2d 667; *Mayer v. City of Chicago* (1971), 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372), or a party involved in certain parental rights proceedings (see, e.g., *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 399 N.E.2d 66), we would concur with the wording of the Tenth District Court of Appeals: "While in criminal appeals a single copy of the transcript must be prepared at government expense and filed with the court for those who are demonstrated to be indigent, no similar responsibility must be borne by the government in the appeal of civil cases."

*Duff v. Ohio Dept. of Rehabilitation and Correction* (June 30, 1992), Franklin App. No. 92AP-146, unreported, at 1

5th Dist. Stark No. 1998CA00331, 1999 WL 254504 (Apr. 19, 1999). An indigent parent's right to a transcript at state expense is limited to cases involving the permanent termination of parental rights; no right exists in an appeal from an order of temporary legal custody. *In the Matter of E.J.,* 12th Dist. Warren No. CA2014-07-098, 2015-Ohio-731, at *5; *In the Matter of A.P.*, 10th Dist. Franklin No. 14AP-23, 2014-Ohio-5244, ¶18.

**{¶22}** If such transcripts were unavailable, other options were available to Mother in order to supply this Court with a transcript for purposes of review. Specifically, under

App.R. 9(C), appellant could have submitted a narrative transcript of the proceedings, subject to objections from appellee and approval from the trial court. Also, under App.R. 9(D), the parties could have submitted an agreed statement of the case in lieu of the record. The record in this matter indicates Mother did not attempt to avail herself of either App.R. 9(C) or 9(D).

I., II. & III.

**{¶23}** Mother's three assignments of error evidence a confusion on her part between "legal" custody" and "permanent custody."

**Legal Custody.**

**{¶24}** In the case below, Paternal Grandmother filed a complaint requesting temporary legal custody of the three children. Mother filed an answer and a counterclaim to the complaint.

**{¶25}** Importantly, the award of *legal* custody is "not as drastic a remedy as *permanent* custody." *In re L.D.,* 10th Dist. No. 12AP–985, 2013–Ohio–3214, ¶ 7 [emphasis added]. *See also In re N.F.,* 10th Dist. No. 08AP–1038, 2009–Ohio–2986, ¶ 9. This is because the award of legal custody does not divest parents of their residual parental rights, privileges, and responsibilities. *In re C.R.,* 108 Ohio St.3d 369, 2006–Ohio–1191, 843 N.E.2d 1188, ¶ 17. Therefore, since the granting of legal custody does not divest a parent of his or her fundamental parental rights, the parent can petition the court for a custody modification in the future. *In re L.D.* at ¶ 7.

**{¶26}** R.C. 2151.011(B)(19) defines "legal custody" as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." *In re*

*C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 15(2006). "Residual parental rights, privileges, and responsibilities" means those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support. R.C. 2151.011(B)(48).

**{¶27}** In addition, R.C. 2151.011(B)(52) defines "temporary custody" as "legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court * * *." *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 16 (2006). The important distinction is that an award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities. See R.C. 2151.011(B)(19) and *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 8, fn. 1. In the future, then, in this case, either parent may petition the court for a modification of custody. *In Re Hockstok*. at ¶ 36.

**{¶28}** *Hockstok* did not involve an abused, neglected, or dependent child and arose from a private custody dispute originating in the domestic relations court pursuant to R.C. 3109.04. There, the Supreme Court said: "[A] trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent." *Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, syllabus.

**{¶29}** A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents. It

does not, however, permanently foreclose the right of either parent to regain custody, because it is not a termination of all residual parental rights, privileges, and responsibilities, and therefore a motion for a change of custody could be filed in a proper case in accordance with law. See R.C. 2151.42. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 23 (2006).

**{¶30}** We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v. Flesher*, 12 Ohio St. 2d 107, 233 N.E. 2d 137(1967); *State v. Stanton*, 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94(1968); *Wachovia Mtg. Corp. v Aleshire*, 5th Dist. Licking App. No. 09 CA 4, 2009-Ohio-5097 at ¶16. See, also, App.R. 12(D).

**{¶31}** It is with these concepts in mind that we shall review Mother's Assignments of Error.

I.

**{¶32}** In her First Assignment of Error, Mother contends that the trial court's denial of her right to be present for the final trial violated her constitutional rights. Mother also argues the trial court denied her right to counsel.

**{¶33}** Mother's contentions are overbroad. At no time did Mother request the trial court appoint her counsel. Whether an inmate should be brought to court to personally argue his case in a civil matter depends upon the particular and unique facts and circumstances of each case. *Mills v. Mills*, 10th Dist. No. 10AP–495, 2011–Ohio–2848, ¶ 12 *citing Tolliver v. Liberty Mut. Group*, 10th Dist. No. 04AP–226, 2004–Ohio–6355, ¶ 8. In *Mancino v. Lakewood*, 36 Ohio App.3d 219, 221, 523 N.E.2d 332 (8th Dist.1987),

the Eighth District set forth the following criteria to be weighed in making this determination:

> * * * (1) whether the prisoner's request to be present at trial reflects something more than a desire to be temporarily freed from prison; (2) whether he is capable of conducting an intelligent and responsive argument; (3) the cost and convenience of transporting the prisoner from his place of incarceration to the courthouse; (4) any potential danger or security risk the prisoner's presence might pose; (5) the substantiality of the matter at issue; (6) the need for an early resolution of the matter; (7) the possibility and wisdom of delaying the trial until the prisoner is released; (8) the probability of success on the merits; and (9) the prisoner's interest in presenting his testimony in person rather than by deposition.

Id. at paragraph two of the syllabus.

{¶34} In her motion filed October 2, 2018, Mother asked the Court to permit her to attend the trial via Skype, real-time video or telephone. Mother concluded her request with the following:

> Mother requests the Court accommodate her incarceration and allow her to move forward with this custody counterclaim and to participate by whatever method is acceptable to the Court.

{¶35} By Judgment Entry filed October 8, 2018, the trial court permitted Mother to participate in the pre-trial hearings by telephone. The Court noted that it did not have the technical capabilities to permit real-time video or Skype participation. The court noted the factors set forth in *Mancino* and concluded, "…no compelling reason for the [Mother's]

testimony was present in this case." Rather, the Court determined that her interests could be protected by submitting a video deposition as authorized by Civ.R.30 (B)(3).

**{¶36}** We find any error in not conveying Mother to the March 21, 2019 final hearing did not affect Mother's substantial rights and was therefore harmless beyond a reasonable doubt.

**{¶37}** The complaint filed in this case did not request permanent custody. Mother, in her Answer and Counterclaim requested that the court not grant permanent custody to the Paternal Grandmother. The trial court did not grant permanent custody to the Paternal Grandmother. In the case at bar, the trial court did not permanently divest Mother of all of her parental rights; rather the court certified the case to the juvenile court under R.C. 2151 "for further proceedings." R.C. 3109.04(D)(2).

**{¶38}** Because Mother has been incarcerated since October 2017, Mother is not in a position to provide a home, food, medical care, schooling, clothing or any other necessity to the children. It is beyond dispute that the children cannot presently live with the Mother. Residual parental rights include the right to reasonable visitation. Mother remains free to petition the juvenile court upon her release and seek a return of legal custody of the children.

**{¶39}** In short, Mother fails to indicate how she has been prejudiced by the trial court's actions or that the result of the proceedings would have been different had she been permitted to attend the final hearing.

**{¶40}** Mother's First Assignment of Error is overruled.

## II. & III.

{¶41}  In her Second Assignment of Error, Mother argues that the trial court erred by making a finding that she was unsuitable to retain legal custody of the children.  In her Third Assignment of Error, Mother contends that the trial court erred by relying on the written report of the Home Investigator when the investigator failed to interview Mother and Mother had no opportunity to cross-examine the  Investigator.

{¶42}  In the case at bar, the trial court did not permanently divest Mother of all of her parental rights; rather the court certified the case to the juvenile court under R.C. 2151 "for further proceedings."  R.C. 3109.04(D)(2).

{¶43}   Because Mother has been incarcerated since October 2017, Mother is not in a position to provide a home, food, medical care, schooling, clothing or any other necessity to the children.  It is beyond dispute that the children cannot presently live with the Mother.  Residual parental rights include the right to reasonable visitation.  Mother remains free to petition the juvenile court upon her release and seek a return of legal custody of the children.  It is therefore beyond dispute that Mother is unsuitable at the present time to obtain care, custody and placement of the children.

{¶44}  In short, Mother fails to indicate how she has been prejudiced by the trial court's finding of unsuitability.  Mother has also failed to elucidate how the result of the proceedings would have been different had she been interviewed by the home investigator or allowed to cross-examine said investigator.

{¶45}  We find any error in the Home Investigator not interviewing Mother, Mother not cross-examining said investigator and the trial court's finding Mother unsuitable did

not affect Mother's substantial rights and was therefore harmless beyond a reasonable doubt.

{¶46} Mother's Second and Third Assignments of Error are overruled.

{¶47} The judgment of the Richland County Court of Common Pleas, Domestic Relations division is affirmed.


By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur