[Cite as *In re Guardianship of S.B.*, 2022-Ohio-3249.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. Earle E. Wise, Jr., P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| IN RE GUARDIANSHIP OF S.B. | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : | Case No. 2022 CA 0006 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Probate Division, Case No. 20042078 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | September 15, 2022 |

APPEARANCES:

For Appellant:

JONATHON C. ELGIN
2291 Village Park Court
Ontario, OH 44906

For Appellee:

NO APPEARANCE

*Delaney, J.*

{¶1} Appellant S.B. appeals the December 10, 2021 and December 16, 2021 judgment entries of the Richland County Court of Common Pleas, Probate Division.

## FACTS AND PROCEDURAL HISTORY

### First Guardianship

{¶2} On October 29, 2004, S.J.B. filed an Application for Appointment of Guardian of Alleged Incompetent, pursuant to R.C. 2111.03, with the Richland County Court of Common Pleas, Probate Division. The application and attached documentation stated in summary that a guardianship was necessary because S.J.B.'s son, Appellant S.B. had suffered a traumatic brain injury after an assault. S.B. was 29 years old.

{¶3} The probate court granted the Appointment of Guardian for Incompetent Person on December 2, 2004. S.J.B. was appointed the guardian of S.B.'s person for an indefinite period of time.

{¶4} On April 23, 2007, S.J.B. filed an application to terminate the guardianship. The probate court denied the application to terminate the guardianship by judgment entries filed on May 31, 2007 and June 5, 2007.

{¶5} On September 2, 2008, S.B. submitted a personal letter to the probate court requesting the court terminate or modify the guardianship. The probate court set the matter for a hearing and appointed counsel for S.B. On November 12, 2008, the probate court filed a judgment entry stating that S.B. had dismissed his request to terminate the guardianship.

{¶6} On April 9, 2009, S.J.B. submitted a personal letter to the probate court requesting the court terminate the guardianship. S.B. submitted a personal letter to the probate court on July 23, 2009, also requesting the court terminate the guardianship.

{¶7} On September 17, 2009, S.J.B. filed a motion to resign as guardian of S.B. and requested the probate court appoint a successor guardian. The probate court set the matter for a hearing. On September 25, 2009, the trial court permitted S.J.B. to resign as guardian effective upon the appointment of a successor guardian.

{¶8} On July 7, 2010, S.J.B. filed an Application to Terminate Guardianship with an attached Statement of Expert Evaluation providing the opinion that the guardianship should be terminated. On July 9, 2010, the probate court granted the Application to Terminate Guardianship of S.B.'s person.

**Second Guardianship**

{¶9} On September 9, 2021, attorney Joseph Jerger filed an Application for Appointment of Guardian of Alleged Incompetent, requesting he be named the guardian of S.B.'s person for an indefinite period of time. The application stated in summary that the guardianship over S.B. was necessary because S.B. was incapable of taking proper care of himself due to S.B.'s traumatic brain injury and other medical issues, for which S.B. was currently residing in a nursing home for treatment and care. The attached Statement of Expert Evaluation completed by Dr. Dirk Juschka, a licensed physician, stated it was his opinion that a guardianship should be established.

{¶10} The probate court set the matter for hearing on October 13, 2021. The hearing was continued to December 10, 2021.

{¶11} The Court Investigator's Report on Proposed Guardianship was filed on September 28, 2021. The probate court Investigator determined that S.B. opposed the application for guardianship. Based on her investigation, the court investigator recommended that a guardianship was necessary for S.B.

{¶12} The probate court appointed counsel for S.B. On December 10, 2021, a Statement of Expert Evaluation was filed by Dr. Deborah Koricke, a licensed clinical psychologist secured by S.B. to conduct an independent competency evaluation. It was Dr. Koricke's opinion that the Probate court should establish a guardianship for S.B.

{¶13} The hearing for the application for guardianship went forward on December 10, 2021. Attorney Joseph Jerger, the applicant for guardianship, and S.B.'s counsel were present in the courtroom. S.B., who was residing in a nursing home, appeared by telephone due to Covid restrictions. The attorneys stipulated to the two Statement of Expert Evaluations. The only witness to testify at the hearing was S.B. At times during his testimony, S.B.'s responses were unintelligible. For example:

Q. Do you recall any kind of medical problem?

A. No (unintelligible) to a doctor for (unintelligible)

Q. I didn't understand that. Sorry.

A. I thought (unintelligible)

(T. 10). At the conclusion of the hearing, the applicant stated, "It's clear that he's suffered from some strokes. He's still suffering from that. I think you can tell by the – by his speech – it's slow and slurred * * *." (T. 20). Counsel for S.B. conceded that S.B.'s speech was slow and slurred. (T. 21).

{¶14} The probate court found at the conclusion of the evidence that at the present time, S.B. was someone in need of a guardianship based on the two expert evaluations and the court's investigative report. (T. 24). The probate court found Attorney Joseph Jerger to be an appropriate guardian. (T. 25).

{¶15} Via judgment entries filed on December 10, 2021 and December 16, 2021, the probate court found S.B. to be an incompetent person and in the need of a guardian of his person. Attorney Joseph Jerger was appointed as the guardian.

{¶16} It is from these judgment entries that S.B. now appeals.

**ASSIGNMENTS OF ERROR**

{¶17} S.B. raises two Assignments of Error:

{¶18} "I. THE TRIAL COURT TECHNOLOGY FAILED TO PRESERVE A COMPLETE RECORD UPON WHICH AN APPEAL MAY BE TAKEN.

{¶19} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THAT APPELLANT [S.B.] WAS A PERSON IN NEED OF A GUARDIAN."

**ANALYSIS**

**I.**

{¶20} In his first Assignment of Error, S.B. contends the probate court technology failed to preserve a record, preventing S.B. from presenting a full record for this Court's appellate review. S.B. supplied the Court with a transcript of the December 10, 2021 hearing in support of his appeal. The transcript shows that S.B. appeared at the hearing by telephone due to his residence in a nursing home and Covid restrictions. The parties noted during the hearing that S.B. was recovering from several strokes and his speech was slow and slurred. (T. 20). It appears from the transcript of the hearing that the

attorneys in the courtroom could not understand some of S.B.'s responses to their questions:

Q. How much time will that give you to do your shopping?

A. Around (unintelligible)

Q. (Inaudible) it's garbled.

A. (Unintelligible)

* * *

Q. How much social security do you get a month?

A. (Unintelligible)

Q. I can't understand that. How much do you make?

A. A thousand and forty-five dollars a month.

(T. 12). At no point in S.B.'s testimony did his counsel object to the proceedings based on the inability to understand S.B.'s responses.

{¶21} S.B. contends on appeal that during his direct examination, the court reporter recorded 27 of his responses as "unintelligible." S.B. states that he relied upon the probate court technology to accurately capture his testimony and the issue was not discovered until the transcript was prepared.

{¶22} "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980), citing *State v. Skaggs*, 53 Ohio St.2d 162, 163, 372 N.E.2d 1355 (1978). This requirement is set forth in App.R. 9(B), which provides, in pertinent part, as follows: "* * * the appellant shall in writing order from the reporter a

complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record * * *." *State v. Durr*, 5th Dist. Richland No. 18CA78, 2019-Ohio-807, 2019 WL 1077248, ¶ 15.

{¶23} This Court has previously held that if a transcript is unavailable, other options are available to S.B. in order to supply this Court with a transcript for purposes of review. Specifically, under App.R. 9(C), S.B. could have submitted a narrative transcript of the proceedings, subject to objections from appellee and approval from the trial court. Also, under App.R. 9(D), the parties could have submitted an agreed statement of the case in lieu of the record. The record in this matter indicates S.B. did not attempt to avail himself of either App.R. 9(C) or 9(D). *Whitson v. Whitson*, 5th Dist. Richland No. 19CA32, 2019-Ohio-4235, 2019 WL 5173791, ¶ 22

{¶24} In this case, we cannot summarily conclude the probate court technology failed to record S.B.'s testimony. The record shows the parties agreed that S.B. was medically restricted to appearing at the hearing by telephone, his speech was slurred and slow due to his medical condition, and the parties themselves had difficulty understanding S.B. If the transcript did not adequately reflect S.B.'s testimony, S.B. could have utilized App.R. 9(C) or 9(D) to provide a complete record for appellate review.

{¶25} S.B.'s first Assignment of Error is overruled.

**II.**

{¶26} In his second Assignment of Error, S.B. argues the probate court abused its discretion when it found S.B. was a person in need of a guardian. We disagree.

{¶27} A probate court's decision to appoint a guardian is generally within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.

*In re Guardianship of Borland*, 5th Dist. Stark No. 2002CA00410, 2003-Ohio-6870, 2003 WL 22969359, ¶ 8; *In re Guardianship of Miller*, 187 Ohio App.3d 445, 2010-Ohio-2159, 932 N.E.2d 420 (3rd Dist.); *In re Guardianship of Waller*, 192 Ohio App.3d 663, 2011-Ohio-313, 950 N.E.2d 207 (1st Dist.), ¶ 16; *In re Guardianship of Anderson*, 2nd Dist. Montgomery No. 25367, 2013-Ohio-2012, 2013 WL 2150826, ¶ 15. "The paramount concern is the welfare of the ward and absent an abuse of discretion the probate court's decision will not be disturbed." *In re Guardianship of Marks*, 8th Dist. Cuyahoga No. 110814, 2022-Ohio-2495, 2022 WL 2841924, ¶ 37 quoting *In re Tutt*, 8th Dist. Cuyahoga No. 77028, 2000 WL 1231477, 4, 2000 Ohio App. LEXIS 3961, 10 (Aug. 31, 2000). "When an alleged incompetent objects to the appointment of a guardian, as is the case here, the probate court must be very cautious in proceeding." *Matter of Guardianship of Glasgow*, 12th Dist. Warren No. CA2021-08-074, 2022-Ohio-1366, 2022 WL 1210838, ¶ 16 citing *In re Guardianship of Corless*, 2 Ohio App.3d 92, 94 (12th Dist.1981).

{¶28} An abuse of discretion indicates that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "A reviewing court will not reverse a judgment appointing a guardian as an abuse of discretion if it is supported by competent, credible evidence." *In re Guardianship of Waller*, 192 Ohio App.3d 663, 2011-Ohio-313, 950 N.E.2d 207, ¶ 16.

{¶29} R.C. 2111.02(A) provides that, "If found necessary, a probate court on its own motion or on application by any interested party shall appoint, subject to divisions (C) and (D) of this section and to section 2109.21 and division (B) of section 2111.121 of the Revised Code, a guardian of the person, the estate, or both, of a minor or incompetent[.]" An "incompetent" is "[a]ny person who is so mentally impaired, as a result

of a mental or physical illness or disability, as a result of intellectual disability, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property * * *." R.C. 2111.01(D)(1).

{¶30} The probate court is required to hold a hearing prior to awarding guardianship. R.C. 2111.02(C). In pertinent part, the statute requires that the "hearing shall be conducted in accordance with" the following:

> (3) If the hearing concerns the appointment of a guardian or limited guardian
>
> for an alleged incompetent, the burden of proving incompetency shall be by
>
> clear and convincing evidence.

R.C. 2111.02(C). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954).

{¶31} Following our review of the record, we find there was clear and convincing evidence that S.B. was incompetent and could not properly take care of himself. S.B. had a traumatic brain injury in 2004 and due to that first traumatic brain injury, he was the subject of a guardianship until it was terminated in 2010. A second application for guardianship was filed in 2021 due to S.B.'s second traumatic brain injury and other medical conditions, requiring him to be cared for in a nursing home. In addition to the two traumatic brain injuries, he had suffered multiple strokes due to unresolved hypertension. He was able to feed and dress himself but needed assistance with bathing, driving, and meal preparation.

{¶32} After her investigation, the court investigator recommended a guardianship was necessary for S.B.'s person. The two expert evaluations filed in this case

recommended that a guardianship over S.B.'s person would be in his best interest. Dr. Koricke's independent examination stated that S.B. was mentally impaired due to either S.B.'s second traumatic brain injury after a bicycle accident or from his long-term alcohol abuse. S.B. refused to take his prescribed medication and denied having any medical issues. He was quick to anger and Dr. Koricke observed S.B. physically lash out at a social worker during her examination, while the court investigator also noted S.B. had chased the nursing home staff down the hall when he was not happy with something.

{¶33} During his testimony, S.B. knew the town he was living in, but did not know the name of the nursing home he was in or how he came to be there. Later in his testimony he stated he was in a hospital facility because he had a stroke. He knew his date of birth and how much Social Security funds he received. Counsel asked S.B. to complete simple math problems, which S.B. answered correctly. S.B. admitted he did not want to take his medication because he did not know what they were and tasted bad. He was asked what his plans were if he was discharged from the nursing home and S.B. could not articulate where he would live.

{¶34} Based on the two expert evaluations, the court investigator's report, and S.B.'s testimony, the probate court found that S.B. was an incompetent person and needed a guardian of his person. Upon this record, we find no abuse of discretion to find that S.B. was incapable of taking proper care of himself so that a guardian would be in his best interests.

{¶35} S.B.'s second Assignment of Error is overruled.

**CONCLUSION**

{¶36} The judgment of the Richland County Court of Common Pleas, Probate Division is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Gwin, J., concur.